■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMIE PATTERSON, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County (Delin, J., at the trial and sentence; Lockman, J., at the suppression hearing), rendered November 8, 1979, convicting him of two counts of murder in the second degree, and one count of robbery in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain statements. By order of this court dated February 9, 1981, the case was remitted to the County Court to report on whether the police at the time of questioning the defendant, knew that he was represented by counsel as to

other pending crimes. The appeal was held in abeyance in the interim (*People v Patterson*, 80 AD2d 591). The report of the County Court has been received. Judgment reversed, on the law, motion to suppress granted as to the statements made to Detective Leahy and the Assistant District Attorney and new trial ordered. On January 26, 1979 defendant was arrested in Brooklyn, New York, for the armed robbery of a luncheonette in Freeport, Long Island, which had occurred on January 21, 1979. The arrest was the result of an investigation involving both Nassau County and Kings County police. Upon being brought to the 81st Precinct in Brooklyn and after being given his *Miranda* warnings, defendant asked to speak to Detective Dale, the arresting officer, with whom he had been acquainted for a number of years. During the course of what the detective called a "personal conversation", defendant responded that he committed the robbery because he "needed money for a lawyer on another case", or "on a case prior to this incident." Dale characterized the statement as a "fast remark", and did not pursue the issue; the conversation continued, with defendant asking, *inter alia,* what would happen to him and his family. Defendant was subsequently introduced to Detective Leahy, the Nassau County officer in charge of the investigation. Defendant was readvised of his rights and eventually made an oral confession, which was reduced to writing and signed by defendant. Defendant also gave a question and answer statement to an Assistant District Attorney. Detective Leahy testified at the *Huntley* hearing that during the course of the investigation he learned that the defendant had been arrested on January 10, 1979 at the 79th Precinct in Brooklyn. He went to the precinct to find out the status of the case, but was unable to find out anything other than the existence of the arrest. He also obtained a polaroid snapshot of defendant which noted on the back that he was "[a]rrested 1/10/79 for robbery." The evidence at the hearing showed that defendant was in fact arrested on that day in Kings County for robbery and on January 11, 1979 was represented by Legal Aid on that charge, such representation continuing until April 11, 1980. The testimony at the hearing also indicated that Detective Dale had no knowledge of any kind of the January 10 arrest. The case of *People v Bartolomeo* (53 NY2d 225) requires suppression of all statements made to Detective Leahy and the Assistant District Attorney. In a situation almost identical to that at bar, the court held (p 229) that "[w]here to the knowledge of the interrogating officer a suspect being questioned had been arrested by the same law enforcement agency nine days previously on an unrelated charge, statements obtained in consequence of the interrogation must be suppressed if in fact the suspect is represented by an attorney with respect to the unrelated charge even though the fact of such representation is unknown to the officer". The court stated that the detectives, with knowledge of the outstanding charge, were under an obligation to inquire whether defendant was represented by an attorney on that charge. "Having failed to make such inquiry, the officers were chargeable with what such an inquiry would have disclosed — namely, that defendant did have an attorney acting on his behalf. With such knowledge they were foreclosed either from questioning defendant or from accepting his waiver of counsel's assistance unless his attorney was then present" (p 232). Thus, at bar, where Leahy knew of the arrest 16 days earlier and failed to inquire if defendant was represented by counsel, all statements made to Leahy and the Nassau County Assistant District Attorney should have been suppressed. We find, however, that the comment by defendant made to Detective Dale as to his need for money for a lawyer on another case does not require suppression of subsequent statements made to Dale. The statement itself cannot be said to constitute knowledge of a prior pending charge, nor the existence of an attorney on such a charge.

Furthermore, under the circumstances of the conversation between Dale and defendant, we do not find that the comment triggered the duty to inquire further as to whether defendant had an attorney on a prior pending case. We have considered defendant's remaining contentions and find them to be without merit. Hopkins, J. P., Titone and Rabin, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment, with the following memorandum: Defendant was arrested in Brooklyn, New York, by officers of the New York City Police Department, for the armed robbery of a luncheonette in Nassau County. Having been advised of his *Miranda* rights in the station house, he engaged in a "personal conversation" with Detective Dale, with whom he was acquainted. He informed Dale that he committed the robbery because he needed money to pay a lawyer in connection with a previous case, but Dale did not follow up on this comment. Subsequently, defendant was remanded to the custody of Nassau County Detective Leahy, who readvised him of his *Miranda* rights, and then took an oral and written confession from him. An Assistant District Attorney took a further statement from him. Leahy was aware that defendant had been arrested 16 days earlier on an unrelated charge in Brooklyn, but knew nothing else about that case. Defendant then moved for suppression of his statements to Dale, to Leahy, and to the Assistant District Attorney. *People v Bartolomeo* (53 NY2d 225), in extending the rule of *People v Rogers* (48 NY2d 167), held that where a suspect being interrogated in custody had recently been arrested by the same law enforcement agency on an unrelated charge, and the fact of this arrest was known to the interrogating officer, the interrogating officer would be foreclosed from interrogating the suspect if he was represented by counsel on the prior charge (absent a waiver of counsel in counsel's presence) regardless of the interrogating officer's actual knowledge of the presence of counsel. The majority rightly holds that the defendant's statements to Dale need not be suppressed under *Bartolomeo,* because defendant's off-hand comment to Dale was not such as would alert Dale to the fact that defendant had recently been arrested. The remark that defendant needed money to pay a lawyer in connection with a previous case does not necessarily imply that the previous case was a criminal prosecution; it certainly was insufficient to alert Dale to the fact of defendant's arrest by the same law enforcement agency as that which employed Dale. Consequently, the statements made to Dale need not be suppressed. Insofar as the majority has voted to suppress the confession and statements made to Leahy and the Assistant District Attorney, however, I must vigorously dissent. To begin with, defendant's prior arrest was by the New York City Police Department, whereas Leahy was a Nassau County detective. The decision in *Bartolomeo* is limited to a situation in which the prior and current arrests are made by the *same* law enforcement agency; the court explicitly left open the question as to what consequences would follow were the prior arrest effected by a different agency (see *People v Bartolomeo, supra,* p 229, n 1; see, also, *People v Smith,* 54 NY2d 954). And although Leahy was admittedly aware of the prior arrest in Brooklyn, he had no knowledge that the defendant was represented by counsel in connection therewith, so as to invoke the rule of *People v Rogers (supra).* To hold that Leahy was obliged to inquire as to defendant's representation on the prior charge would be almost identical to a ruling in which the Court of Appeals has already said would "unnecessarily and unrealistically limit police interrogation procedures" (*People v Kazmarick,* 52 NY2d 322, 328; see *People v Servidio,* 77 AD2d 191, affd 54 NY2d 951). What the majority has done, then, is to expand *Bartolomeo* to reach even those cases where the prior and instant arrests are by different law enforcement agencies, but where the officer handling the current investigation has some awareness of the prior arrest.

Such an expansion of the *Bartolomeo* rule is both unwarranted and unwise. A balance must be struck between a suspect's right to be protected from overly zealous police interrogators and the ability of police officers to discharge their increasingly difficult job of protecting the law-abiding citizenry by obtaining voluntary confessions from suspects who wish to offer them. "What is required must always be considered in light of what is practical under the circumstances" (*People v Pinzon,* 44 NY2d 458, 464). Judge Wachtler, writing for the three dissenting Judges in *Bartolomeo* (53 NY2d 225, 239, *supra*), accurately observed that "[i]t is the common criminal, not the one-time offender, who nearly always will manage to have at least one serious charge pending, so that the attorney in the picture can provide him with virtual immunity from questioning in subsequent investigations. I had thought it clear that although our courts are sometimes required to let the guilty go free, this is not because the Constitution serves only the miscreant, but rather because our constitutional protections must apply evenly to us all. By its analysis I believe the majority has turned this basic principle completely around by providing what is in effect a dispensation for the persistent offender" (see, also, the dissent of Judge Wachtler in *People v Smith, supra*). Written in a different context, but very appropriate to the situation before the court, are the following words of Justice McGivern in his dissent in *Matter of Audino M.* (43 AD2d 92, 98): "We honor not the Constitution by straining its filamentary refinements to such blind and unrealistic lengths that we stretch it to protect such a sordid operation. We not only defeat able police work, we [also] keep free the guilty". The right of an accused to be protected from coerced self incrimination is a precious right, one firmly anchored in the very heart of our constitutional heritage (see *Malloy v Hogan,* 378 US 1; *Brown v Walker,* 161 US 591). But suppression of the statements herein will not enlarge that right and will not preserve that right. It will not lead to a greater respect of that right on the part of police officers. It will only frustrate good faith and skillful police work, and will most likely permit an admitted felon to walk away scot free. Our Constitution does not demand this. Accordingly, I dissent.