OPINION OF THE COURT
Edward C. Alfano, J.
The defendant has been indicted on two counts of murder in the second degree, one count of robbery in the first degree, and one count of criminal possession of a weapon in the second degree. The charge is that the defendant, while acting in concert with other persons, on or about February 4, 1981, robbed one Archie Harris in his place of business, and during the robbery Archie Harris was shot to death with a handgun.
*955 Defendant has made a motion for an order suppressing statements made by him on June 10, 1982 to Detective John Regan (Regan) and to Assistant District Attorney Martha Hochberger (Hochberger) on the ground that they were involuntarily made within the meaning of CPL 60.45. Detective Regan recorded defendant’s statement on audio tape and Assistant District Attorney Hochberger recorded defendant’s subsequent statement on video tape.
A confession or admission is admissible at trial only if its voluntariness is established by the People beyond a reasonable doubt. The defense concedes and the court finds that the Miranda warnings were properly given to defendant. However, the defense takes the position that:
(1) On the day in question defendant was arrested in his home after a warrantless entry and therefore all statements made thereafter must be suppressed pursuant to Payton v New York (445 US 573);
(2) Defendant’s confession, having been obtained as a result of custodial questioning on less than probable cause, should be suppressed under Dunaway v New York (442 US 200), and
(3) Defendant having been represented by legal counsel on other pending unrelated charges, the statement should be suppressed pursuant to People v Bartolomeo (53 NY2d 225), People v Smith (54 NY2d 954) and People v Patterson (85 AD2d 698).
A pretrial suppression hearing was conducted by the court on August 18, 19 and 23, 1982. Regan and Hochberger testified for the prosecution. The defense called Michael Coleman, supervising attorney of the Criminal Defense Division of the Legal Aid Society Brooklyn office and the defendant.
The court makes the following findings of fact:
On February 4, 1981, Detective Regan commenced an investigation into the homicide of Junior Harris, who, on that date was found shot dead in his store on Ralph Avenue, Brooklyn, New York. The store was referred to as a “Reefer Joint”.
On December 10, 1981, one Jonathan Williams (Williams) voluntarily came into the 77th Police Precinct and *956 asked to speak to Regan. Williams told Regan that he was the common-law husband of Theresa Jacobs, sister of the defendant, and that while defendant was in Williams’ apartment, Williams heard defendant tell defendant’s sister about defendant’s participation in the robbery and murder of Junior Harris. This was the first time that Regan was aware that defendant was involved in the homicide.
On December 15, 1981 Regan interviewed one Derrick Jetter (Jetter) who also implicated defendant in the murder.
During the month of December, 1981 Regan learned that defendant had been arrested on April 28, 1981 for petit larceny, on May 7, 1981 for possession of stolen property, and on May 20, 1981 for attempted grand larceny.
On or about January 1, 1982 Regan had obtained an arrest photograph of defendant in connection with defendant’s arrest dated May 20, 1981, but made no attempt to ascertain the status of the three aforesaid arrests.
On June 7, 1982 Regan spoke to Assistant District Attorney Mark Feldman (Feldman) about the case at bar. Feldman was made aware of defendant’s three arrests.
On June 8, 1982 Regan inquired of New York State Parole and Central Warrants as to any pending warrants against defendant. Regan was advised that there were no warrants pending. This indicated to him that there were no cases pending against the defendant. Therefore, he made no further inquiry as to the status of the arrests.
On June 10, 1982, at about 10:00 A.M., in compliance with Feldman’s suggestion that defendant be interviewed but not arrested unless he confessed, Regan and his partner, Detective Atkinson, went to defendant’s home on Hancock Street in Brooklyn, New York, and knocked on the door. Defendant opened the door and Regan, in plain clothes, identified himself and his partner as police officers and asked defendant if he was John Jacobs. The defendant answered that he was and Regan asked if he could enter the apartment. The defendant consented and both police officers entered. Regan told defendant that he wanted to talk to him about a homicide and would defendant accom *957 pany him to the 77th Precinct. The defendant stated he would do so willingly but he had to ask a neighbor to watch his apartment since he did not have any keys to it. Defendant got dressed and, with the officers, went to a neighbor and asked her to watch the apartment. Defendant was never grabbed, touched or handcuffed, nor was he under arrest. Defendant voluntarily accompanied the police to their unmarked car and they drove him to the 77th Precinct.
The defendant testified and the court finds that when defendant had been arrested previously the police had their guns drawn and he had been grabbed, handcuffed and thrown into a police car. He was not so treated on June 10, 1982 by Regan or his partner. The court finds that defendant was not under arrest or in custody in his home, nor was he under arrest or in custody on his way to the precinct.
At the precinct, however, defendant was brought to an upstairs interrogation room. The room had one door and no window. He sat at a table with police officers always present. Regan showed defendant an arrest photograph of defendant and then showed defendant pictures of the corpse of the victim at the scene. Regan stated he wanted to know what defendant knew about this crime but that before defendant said anything Regan would read defendant the Miranda rights.
The court finds that at this point defendant was about to be subjected to express questioning which would result in the reasonable likelihood that defendant would incriminate himself. The court determines that a reasonable person with a prior arrest record to whom the Miranda warnings were read would consider himself in custody. Custody occurs if a suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived (People v Rodney P., 21 NY2d 1; People v Yukl, 25 NY2d 585).
Defendant was never told he could leave the precinct. Regan testified that while defendant was free to leave the precinct, defendant did not know it. Thus, Regan, in effect, establishes that in the circumstances surrounding the de *958 fendant, a reasonable person would belieye he was not free to leave and was therefore in custody.
After the defendant made the incriminating statement to Regan, Regan called Hochberger, who came to the precinct and took another statement on video tape. Prior to taking the statement Hochberger also advised defendant of his Miranda rights.
The court finds that at the time both statements were made defendant was in custody.
The court now turns to the arguments raised by the defense in support of its position that the statements should be suppressed.
Since the court has found that defendant was not arrested nor in custody when in his home or on the way to the precinct, the court renders moot defendant’s invocation of the precepts of Payton v New York (supra) to the effect that the Fourth Amendment has drawn a firm line at the entrance to houses which may not be crossed without a warrant in the absence of exigent circumstances and to the effect that any connection between the illegality of arrest and the confession prevents the admissibility of the confessions. There was no illegal arrest or conduct by the police which preceded or resulted in the incriminating statements of the defendant. The doctrine of the fruits of the poisoned tree is inapplicable in the instant case. There was no original taint which vitiated the voluntariness of defendant’s admissions. The court therefore finds no merit to defendant’s first argument.
Defendant’s second argument for the suppression of defendant’s statements is that they were secured as a result of custodial questioning on less than probable cause in contravention of Dunaway v New York (supra). The court finds, however, that the custody of the defendant at the precinct was predicated firmly on probable cause in that Williams and Jetter had both implicated defendant in the crime.
Defendant’s third argument is that defendant’s statements should be suppressed because they were taken without benefit of counsel while defendant was in custody and was represented by counsel in two pending unrelated *959 charges. The defense relies on People v Bartolomeo (supra), People v Smith (supra) and People v Patterson (supra).
The Court of Appeals in its 4 to 3 decision in Bartolomeo (supra) holds that when a suspect being interrogated in custody has recently (nine days earlier) been arrested by the same law enforcement agency on an unrelated charge and the fact of this arrest was known to the interrogating officer, the interrogating officer would be foreclosed from interrogating the suspect if he was represented by counsel on the prior charge (absent a waiver of counsel in counsel’s presence) regardless of the interrogating officer’s lack of knowledge of the presence of counsel on the unrelated charge. The court stated that detectives with knowledge of the outstanding charge were under an obligation to inquire whether the defendant was represented by an attorney on that charge. The court further stated (p 232), “Having failed to make such inquiry, the officers were chargeable with what such an inquiry would have disclosed.”
In Smith (supra), the Court of Appeals held that since the police knew that defendant had been arrested eight months earlier on an unrelated charge and since the officer assumed that the defendant had an attorney on that charge, the officer had an obligation to inquire whether the defendant was represented by an attorney on the earlier charge. The implication is clear that this would be the rule only if the earlier charge were still pending at the time the defendant is questioned.
The Patterson case expands Bartolomeo (supra) to reach even those cases where the prior and instant arrests are by different law enforcement agencies, but where the officer handling the current investigation has some awareness of the prior arrest and that the prior charge was pending at the time of questioning of defendant.
All three cases require that unrelated charges be pending at the time of questioning of the defendant before their holdings may be invoked.
The three aforesaid cases are different in context from the case at bar. The issue of the pendency of unrelated charges is present both in those cases and the case at hand. However, on examining the cited cases, it becomes clear that they are all consonant with each other but distin *960 guishable from the instant case in that in the three cases the respective defendants therein did not plead guilty to the unrelated charges and abscond before sentence was pronounced as are the facts in this case.
The defendant claims that at the time he was questioned there were pending against him two charges. One was possession of stolen property in connection with his May 7, 1981 arrest, which charge bears Criminal Court Docket No. 1K015966. The other charge was attempted grand larceny in connection with his May 20, 1981 arrest, which charge bears Criminal Court Docket No. 1K017670. The said court dockets which were introduced in evidence by the defense reveal that defendant, represented by a Legal Aid Society attorney, pleaded guilty to petit larceny in both cases and was to be sentenced in both cases on September 3, 1981. The court dockets further disclose that defendant failed to appear on the sentence date and bench warrants were ordered. Issuance of the warrants was stayed to September 11,1981 and the cases were adjourned to that date. On September 11, when defendant again failed to appear, the bench warrants were issued. Defendant remained a fugitive until his arrest in the instant case nine months later.
The Court of Appeals in People v Lynn (28 NY2d 196, 201) stated: “A plea of guilty ‘is more than a confession * * * it is itself a conviction [and] nothing [else] remains but to give judgment and determine punishment’ (Boykins v. Alabama, 395 U. S. 238, 242).”
In the case of a guilty plea, it is reasonable to assume, absent allegations to the contrary, that the defendant has neither reason nor desire to prosecute an appeal (People v Lynn, supra). Accordingly, on June 10, 1982, when defendant was questioned, the prior charges on which the defendant was to be sentenced were no longer pending. Had defendant not absconded, the entire matter would have been terminated on September 3, 1981 with the imposition of the sentence (CPL 1.20, subd 16, par [c]).
Nor is there any room to speculate that the sentence would have been other than perfectly legal and proper thus completing the case and terminating counsel representation. The defendant has, in fact., been sentenced on each *961 case to six months’ confinement to run concurrently and the defendant is about to complete his sentence. No appeal was taken.
There is nothing to indicate that defendant’s failure to appear on the date of sentence was other than his voluntary flight from justice. It is clear from the evidence at the hearing that defendant was hale and hearty and living at home at the time Regan made contact with him. Had defendant elected to return to custody prior to that time he could have done so. It is obvious that he desired to remain a fugitive.
The court holds that defendant’s flight, after pleading guilty to the prior unrelated charges and before sentence, precipitating thereby the issuance of a bench warrant for his arrest, did not extend the pendency of the unrelated charges nor counsel representation within the context of People v Bartolomeo (supra) beyond the original sentence date, September 3, 1981. May defendant, a fugitive, be countenanced to contend that his flight kept his prior unrelated cases open and therefore he may now benefit from his illegal act by claiming the continued pendency of those prior unrelated cases and thus frustrate the use of his otherwise voluntary admission? Had the defendant remained at large nine years instead of the nine months, would the unrelated cases and counsel representation in the context of Bartolomeo be pending for nine years? The court thinks not. Only the bench warrant for defendant’s arrest was pending at the time defendant confessed on June 10,1982. Had Regan either on June 8,1982, when he checked with New York State Parole and Central Warrants as to any warrants pending against the defendant, or on June 10,1982, when he questioned the defendant in the 77th Precinct, inquired further as to the status of the prior arrests he would have discovered that no charges were pending against this defendant within the purview of the Bartolomeo, Smith and Patterson cases.
The court holds that at the time the defendant was questioned on June 10, 1982, there were no unrelated charges pending against the defendant so as to preclude questioning in the absence of counsel.
*962 A contrary holding would produce the absurd result of automatically extending the pendency of a case and legal representation therein by the nefarious expedient of absconding from justice thereby immunizing the repeat offender from questioning by police with reference to his latest criminal acts as long as he chooses to remain at large or until he is involuntarily returned to custody. The habitual miscreant would thus enjoy a shell of protection not available to the uninitiated. This court declines to provide what in effect would be special dispensation for the persistent offender.
While the courts must protect persons in police custody from overzealous interrogators, this duty must be discharged in a manner which would not impede police ability to perform their increasingly difficult function of investigating crimes and protecting innocent citizens.
Suppression of the statements made by this defendant would frustrate skillful police work and perhaps prevent the prosecution from proving its case against an admitted felon. Our Constitution demands nothing of the sort.
Inasmuch as at the time defendant gave the subject statements to Regan and Hochberger no unrelated charges were pending, and since the statements were otherwise voluntary, they are admissible in evidence.
Defendant’s motion to suppress these statements is denied.
This constitutes the opinion, decision and order of the court.