OPINION OF THE COURT
Joseph F. Farlo, J.
The court conducted a Huntley hearing during which the People called Mr. Louis Santora, Port Authority Police Officer George Clemens and New York City Detective Edward Cahill.
The court finds that on November 10, 1982, Santora stopped his motor vehicle in front of the Ski Deli building, a delicatessen, to purchase a beer. Upon returning to his motor vehicle, he observed and felt the defendant rise from the rear seat. He observed a silver or chrome colored revolver in defendant’s hand and was ordered to drive out of the airport. Santora drove approximately 5 to 6 minutes during which time he observed the defendant’s face on numerous occasions in the rear view mirror. During this drive, he eventually was able to turn into a driveway with a guard booth and upon doing so, he opened the driver’s door and escaped.
Upon entering the JFK police station, Santora related the incident to the police, who immediately broadcasted a *997 description of the car as well as Santora’s description of the defendant.
Clemens heard the broadcast and while patrolling the area, drove past a clump of bushes where he noticed some movement. He called for a backup and went after the defendant, who was trying to crawl away. He drew his revolver, placed him under arrest and searched him. The defendant had a chrome pair of handcuffs in his possession. After placing him under arrest, Clemens gave defendant his Miranda rights but did not question him. Upon returning to the precinct, defendant was placed in a room with a two-way mirror and Santora identified him as the perpetrator. After the identification, Clemens read the defendant his rights, this time from a form which the defendant signed. When asked what he was doing in the bushes, he replied he was looking for a job. Thereafter, he said he was sleeping. He also stated that he had gotten the handcuffs from his brother and that he had walked to the airport from Baisley Park and 150th Street.
After processing, Clemens brought the defendant to the New York Police Department’s 112th Precinct and turned him over to Cahill of the Queens Career Criminal Unit. Cahill interviewed both Clemens and Santora. He read the defendant his rights from a printed sheet which was signed by the defendant, Cahill and Clemens as witnesses. Thereafter, defendant initially stated that he decided to go for a walk in the airport, got tired and went to sleep in the bushes. The police woke him up. He then stated he did not walk but was driven by someone named Devine. He told Cahill that the handcuffs were obtained from his 19-year-old brother. Following the interview, Cahill had the defendant remove his jacket and sweat shirt, which he vouchered. Prior to the interview, Cahill obtained his career criminal investigation unit file, which only indicated the number of arrests but not the dates and dispositions and, therefore, was unaware of any current pending arrests. After the interview and prior to arraignment in Criminal Court, Cahill received defendant’s rap sheet containing specific information as to prior arrests.
Concerning defendant’s statements, each one must be considered separately since they were given at different *998 times to different police officers from different agencies. The statement given to Clemens was given after he had twice been informed of his Miranda warnings, once orally and once from a rights form signed by defendant. Nothing in the evidence before this court indicates that the defendant was abused in any way or coerced into making a statement (CPL 60.45).
As hereinafter discussed, the fact that defendant had been arrested earlier on an unrelated matter has no bearing on the statement taken by Clemens, a Port Authority police officer.
Although alluded to by defense counsel, no evidence was adduced to prove the defendant was arrested or represented by counsel prior to his arrest in this case. The court will, however, take judicial notice of the fact that defendant was arrested on June 18, 1982 in Queens County for attempted burglary since that case is currently pending before this court. Nevertheless, Cahill testified that he was unaware of defendant’s prior arrest since the records kept by the Career Criminal Unit of the New York City Police Department only show a suspect’s name, his NYSIS number and the number of prior arrests, not the dates of those arrests.
Under the rule of law promulgated by the Court of Appeals, in People v Bartolomeo (53 NY2d 225), where the police have knowledge of prior unrelated charges pending against a defendant, they are charged with constructive notice of counsel if an attorney was obtained and are prohibited from questioning the suspect unless he waived his counsel’s assistance in the presence of counsel. This rule was further refined in People v Servidio (54 NY2d 951) and People v Smith (54 NY2d 954), the latter held that where the police knew the defendant had been arrested eight months earlier on an unrelated charge, and the officer assumed defendant had an attorney, he had an obligation to inquire further whether the defendant was represented by an attorney on the earlier charge (People v Smith, supra), but where the officer was unaware of the unrelated charge then pending against the defendant, even though pending within the same county and same police department, and even though only two and one-half *999 months old there was no duty on the officer to inquire concerning representation by counsel (People v Servidlo, supra)* Under the facts of the case at bar, it is clear that while Cahill knew the defendant had been arrested in the past, he was not aware when his last arrest occurred or whether there were charges currently pending.
From the testimony elicited, it would appear that the career criminal unit was created to aid in investigations where it is determined that a defendant is a repeat offender. Upon receiving information that a “target” has been arrested, the career criminal unit takes charge of the investigation. The detectives assigned to this unit, therefore, must be aware that defendants they interrogate have criminal records. This court is unaware of any reported cases requiring the police to cease questioning when it is discovered that the suspect has a criminal record. The crux of the issue is not the defendant’s criminal history, but rather his representation by counsel. The common thread running throughout the recent decisions in the Court of Appeals (People v Rogers, 48 NY2d 167; People v Skinner, 52 NY2d 24; People v Knapp, 57 NY2d 161; People v Ellis, 58 NY2d 748; People v Bartolomeo, supra; People v Servidio, supra) has been the simple fact that a defendant was represented by an attorney at the time of interrogation and the police either knew of that representation or should have known due to some circumstance such as a pending criminal action. It is an illogical step to assume that since one has been arrested in the past, he has an open matter and is currently represented by counsel. This conclusion would require the CCI unit and all units of the police department to refrain from questioning any suspect until a prior criminal history is received and then if the suspect has a prior arrest record, a determination of the current status of each arrest will be required. This will not only place an unreasonable burden on the police and thwart the very purpose of the CCI unit, but will also interfere with an innocent citizen’s right to promptly explain his activities, which may well result in a prompt release, or in the least unreasonable lengthy detention. In the instant case, since *1000 Cahill was not aware of charges pending against the defendant, he was under no duty to make any inquiry concerning representation except those that were given in the Miranda warnings which this court finds were given properly and were voluntarily waived as evidenced by the signed rights form.
The above conclusions do not affect Clemens since he was assigned to a different police agency and had no knowledge of defendant’s prior arrests (see People v Fuschino, 87 AD2d 716, affd 59 NY2d 91; People v Patterson, 85 AD2d 698).
The motion to suppress statements is denied.
[Portions of opinion omitted for purposes of publication.]

 A third set of circumstances appeared in the recent case of People v Lucarano (93 AD2d 840), wherein the police were aware of a prior arrest, but the defendant denied he was represented by counsel, questioning was held to be proper.