OPINION OF THE COURT
Chief Judge Cooke.
We hold today that once an attorney has entered the proceeding, thereby signifying that the police should cease questioning, a defendant in custody may not be further interrogated in the absence of counsel. We may not blithely override the importance of the attorney’s entry by permitting interrogation of an accused with respect to matters which some may perceive to be unrelated.
Defendant was convicted, after jury trial, of robbery in the first degree and, upon plea of guilty, of burglary in the third degree. The evidence at trial in part consisted of eyewitness testimony and certain statements made by defendant while in custody and after his attorney had instructed police to cease further questioning. Defendant unsuccessfully sought to suppress this proof and the judgments of conviction were affirmed *170 by the Appellate Division, without opinion. There should be a reversal and a new trial on the robbery indictment.
Defendant was arrested in his home on December 16, 1975 at about 10:15 a.m. as a suspect in a liquor store robbery committed by two youths on February 7, 1975. Defendant was handcuffed, placed in a patrol car and taken to the robbery squad in Mineóla. At the time of arrest, and again at police headquarters, Miranda warnings were administered. Defendant informed the police that he had an attorney but that he was willing to speak in the absence of the attorney. After a two-hour period of interrogation in which defendant denied complicity in the crime, the police received a communication from his attorney instructing them to cease further questioning.
Thereafter, the police asked no further questions about the robbery but, under a purported waiver of defendant’s rights, continued to question concerning unrelated activities in which he had not participated. These queries continued for approximately four hours after the communication from his attorney. During this entire period, defendant was manacled.. After inquiries ceased, the police completed the paper work necessary to process defendant and no further information was sought. Defendant then uttered an inculpatory statement which was overheard by one of the detectives who had been questioning him. His motion to suppress the statement was denied on the ground that the assertion was spontaneously volunteered, and this appeal is based on that ruling.[1]
The genesis of defendant’s utterance must be determined to be either as one arising out of sheer spontaneity or as having been induced by illegal police questioning. The threshold issue is whether once a defendant is represented on pending matters, the police may question the defendant on items unrelated to the subject of that representation after the defendant, in the absence of counsel, has waived his rights.
This court has jealously guarded the individual’s privilege against self incrimination and right to counsel, demanding that these fundamental rights be accorded the highest degree of respect by those representing the State. Indeed, it has been announced in broad language that "[o]nce an attorney enters *171 the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel * * * There is no requirement that the attorney or the defendant request the police to respect this right of the defendant” (People v Arthur, 22 NY2d 325, 329; see, also, People v Settles, 46 NY2d 154; People v Hobson, 39 NY2d 479).
The People maintain nonetheless that a waiver in the presence of counsel is necessary only when the defendant is subjected to interrogation concerning the charge on which he is represented. Thus, it is urged that the four-hour interrogation after the attorney had entered the proceeding was proper because it dealt only with unrelated matters. The People’s position, however, is untenable, it being at odds with the thrust of recent decisions concerning the scope of the State constitutional right to counsel (NY Const, art I, § 6).
It is true that previous decisions of this court, rendered in an era when the Arthur rule was in doubt, excepted from its scope questioning about a charge unrelated to the one on which defendant was represented (see People v Taylor, 27 NY2d 327; People v Hetherington, 27 NY2d 242; but see People v Vella, 21 NY2d 249). And, when the Arthur rule was revitalized in People v Hobson (39 NY2d 479, 483, supra), the exception for unrelated charges was again articulated, although there the court had no need to apply the rule. Since Hobson, however, it has been difficult to define the precise reach of the limitation concerning unrelated charges. Perhaps this is a result of the obvious difficulty encountered in drawing the subtle distinctions necessitated by the interaction of the Hobson and Taylor rules.
Specifically, in People v Ramos (40 NY2d 610), where the defendant, who was represented by an attorney on a drug charge, had been advised not to make any statements at the time of his arrest on an unrelated charge, the advice of the attorney was deemed sufficient to trigger the Arthur rule, and the statements concerning the unrelated charge were suppressed. The ruling was based not on "the mere fortuity that [defendant] was represented by counsel on an unrelated charge, but rather * * * on the attorney’s affirmative and direct action relative to the interrogation which was about to be commenced” (Ramos, 40 NY2d, at p 617). The broad Taylor rule was refined and limited to include the situation "where *172 counsel had not entered the proceeding and where no request for counsel had been made, even though the same defendant might, by mere happenstance, be represented by counsel in a totally unrelated proceeding” (id.).
Last term in People v Carl (46 NY2d 806, 807), it was held to be a “technicality of little significance” that defendant was questioned concerning a crime different than the one for which he was in custody. Prior to the interrogation, counsel had instructed the Sheriff not to speak with defendant in the absence of counsel. Notwithstanding that separate crimes were involved, the court determined that the charges were sufficiently related to preclude interrogation in the absence of counsel because the two incidents occurred within approximately one week, both involved burglaries or attempted burglaries at the same location and both were charged in the same indictment.
The Taylor limitation was further refined in People v Ermo (47 NY2d 863), where defendant was questioned about both an assault and a homicide, committed seven months apart, in the absence of the attorney who represented him on the assault charge. Although conceding that the police would have been entitled to question defendant on the homicide alone, the court nonetheless held statements concerning the homicide to be inadmissible because “the police exploited concededly impermissible questioning as to the assault for the purpose and with the effect of advancing their interrogation on the homicide charge” (id., at p 865). By suppressing these statements, however, the question no longer was whether the defendant was represented on the charge about which he was questioned. Rather, the focus of inquiry was the circumstances of the interrogation and whether its subject included a charge on which defendant had an attorney (see 47 NY2d, at p 868, Gabrielli, J., dissenting).
Thus following Hobson it has been urged in several cases and under a variety of circumstances that the exception concerning unrelated charges was applicable. In each instance, however, it has been found that the exception could not be applied or expanded consistent with the Hobson rationale. It is evident that in these cases, the Taylor rule was considerably narrowed (but cf. People v Coleman, 43 NY2d 222; People v Clark, 41 NY2d 612). The common thread running through these holdings is the simple fact that defendant was represented by an attorney at the time of the *173 interrogation. We today recognize that the Taylor rule is inconsistent with the principles enunciated in Hobson and declare that once a defendant is represented by an attorney, the police may not elicit from him any statements, except those necessary for processing or his physical needs. Nor may they seek a waiver of this right, except in the presence of counsel.
Our acknowledgment of an accused’s right to the presence of counsel, even when the interrogation concerns unrelated matters, represents no great quantitative change in the protection we have extended to the individual as a shield against the awesome and sometimes coercive force of the State. An attorney is charged with protecting the rights of his client and it would be to ignore reality to deny the role of counsel when the particular episode of questioning does not concern the pending charge. It cannot be assumed that an attorney would abandon his client merely because the police represent that they seek to question on a matter unrelated to the charge on which the attorney has been retained or assigned. Finally, it is the role of defendant’s attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge. Once a defendant has an attorney as advocate of his rights, the attorney’s function cannot be negated by the simple expedient of questioning in his absence.
The presence of counsel confers no undue advantage to the accused. Rather, the attorney’s presence serves to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming. That the rule diminishes the likelihood of a waiver or self incriminating statements is immaterial to our system of justice (see People v Settles, 46 NY2d 154, 164, supra; People v Donovan, 13 NY2d 148, 152). Although the State has a significant interest in investigating and prosecuting criminal conduct, that interest cannot override the fundamental right to an attorney guaranteed by our State Constitution.[2] Available are means other than subjecting a person represented by an attorney to interrogation in the absence of counsel.
*174 Having determined that the police interrogation was improper, we turn then to the question whether the inculpatory statement was admissible as a "spontaneously volunteered statement” (People v Hobson, 39 NY2d, at p 483, supra). To fit within this narrow exception, the "spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed” (People v Maerling, 46 NY2d 289, 302-303). Given the unique circumstances here, there can be no conclusion other than that defendant’s statement did not fall within the exception. Defendant, a youth of limited education, was vigorously questioned by two experienced detectives. Although no physical force was employed, the interrogation covered an extensive period — approximately six hours — and during this entire time defendant was manacled to furniture. A coercive atmosphere had been affirmatively created by the continuous interrogation and the significant restriction on defendant’s freedom of movement. The statement was made in the interrogation room when defendant was still handcuffed and while the police processed the paper work in his presence. It cannot be doubted that the psychologically coercive influence of the police tactics had its effect on defendant and induced the statement apparently directed to himself (compare People v McKie, 25 NY2d 19, and People v Kaye, 25 NY2d 139, with People v Garofolo, 46 NY2d 592, and People v Maerling, 46 NY2d 289, supra).
Mere custody exerts some coercive influence on a suspect, but generally, such influence alone will not form the predicate for finding a statement nonspontaneous as a matter of law. Nor is a statement to be precluded simply because it followed a period of questioning conducted at some prior time. Here there is much more; defendant’s will was overborne by a course of conduct destructive of dignity with no respite save for a mere half hour.
 The introduction of defendant’s inculpatory statement was error, which cannot be termed "harmless beyond a reasonable doubt” (People v Crimmins, 36 NY2d 230, 237), and requires a new trial.[3] Since defendant’s plea of guilty to *175 burglary in satisfaction of another indictment was entered upon an agreement that the sentence imposed would run concurrently with the sentence imposed on the robbery conviction, the plea should be vacated (People v Clark, 45 NY2d 432).
The order of the Appellate Division should be reversed, judgments and plea of guilty vacated, statement suppressed and case remitted to Nassau County Court for a new trial on the robbery indictment and further proceedings on the burglary indictment in accordance with this opinion.

. Defendant does not challenge on this appeal the refusal to suppress identification testimony or the statements made by defendant prior to the call to the police by defendant’s attorney.

. Contrary to the suggestion of the dissent, this holding creates no undue impediment to the investigation of criminal conduct unrelated to the pending charge. An accused represented by counsel may still be questioned about such matters; we hold simply that information obtained through that questioning in the absence of counsel may not be used against him. Thus, the police may continue to obtain information from a defendant who is a mere witness to unrelated events.

. [2] Defendant raises as another point on this appeal that the trial court erred when it informed the jury that the defendant had requested the charge that no inferences were to be drawn from the defendant’s failure to testify. Defendant failed to object to the charge and thereby failed to preserve this issue for review. In any event, in light of the disposition of this case, it is unnecessary to rule on this issue. *175 Because a new trial is warranted, however, we note that it is unnecessary and improper to qualify the charge with words indicating that it is given at defendant’s request (see People v McLucas, 15 NY2d 167).