■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY COULTER, Appellant. — Judgment unanimously reversed, on the law, and a new trial granted. Memorandum: Defendant and his wife were indicted by the Orleans County Grand Jury on October 21, 1976 for murder in the second degree and conspiracy in the first degree. Each was granted a separate trial on charges which arose from the shooting death of 16-year-old Norman Corderman in the Town of Shelby on January 20, 1976. Defendant was convicted of murder in the second degree upon a jury verdict rendered in the Orleans County Court. The skeletal remains of a human were found during a search of a swampy area in the Town of Shelby on October 2, 1976. With the aid of dental charts, the body was subsequently identified as that of Corderman, who had been shot in the back of the head and once through the chest. On October 4, 1976, while incarcerated in the Niagara County jail on other charges, the defendant, after having been given the warnings prescribed by *Miranda v Arizona* (384 US 436), was interrogated by State Police investigators. Later that same evening, defendant, informed of his rights, was interrogated by the Niagara County District Attorney. Defendant gave a statement to the effect that he had tried to kill Corderman but could not and that his wife had actually fired the shots. On October 5, 1976, the District Attorney repeated the *Miranda* warnings and questioned him at the jail in the presence of a Deputy Sheriff. At that time, defendant gave a statement in which he admitted shooting Corderman. Subsequently, Raymond Finch, a news reporter for WBEN-TV in Buffalo, New York, conducted an interview with defendant at the jail which was taped and later aired on the evening news. During this interview defendant admitted shooting Corderman twice but claimed that he had done so because he was "influenced" by his wife. This filmed interview was shown at the trial to the jury. On appeal defendant contends that his statements were obtained in violation of his right to counsel because he was interrogated in the absence of counsel while in custody on unrelated charges on which he had been arraigned and assigned counsel *(People v Rogers,* 48 NY2d 167). We agree. It has recently been established that knowledge on the part of an interrogating officer that a suspect in custody is represented on an unrelated charge precludes interrogation in the absence of counsel and renders a purported waiver ineffective when made outside the presence of the attorney *(People v Bartolomeo,* 53 NY2d 225; *People v Soluri,* 81 AD2d 1033). The unrelated charge precludes interrogation on the new charge when the suspect is in fact represented by an attorney on the unrelated charge *(People v Kazmarick,* 52 NY2d 322; *People v Gurnsey,* 81 AD2d 1025). Both of the statements made by the defendant were taken by the Niagara County District Attorney after defendant's arraignment on the unrelated charge. The record reveals that at the *Huntley* hearing the District Attorney testified that he had seen the defendant in the courtroom being arraigned on other charges and "thought" he was represented by the Public Defender. All interrogating officers acknowledge that the defendant was incarcerated on other charges as he was questioned at the jail. Since the defendant had counsel on the other charges for which he was in custody, he

could not be questioned about other matters, related or unrelated, outside the presence of his counsel (*People v Rogers,* 48 NY2d 167, *supra; People v Russell,* 73 AD2d 791; *People v Strever,* 79 AD2d 888). The People maintain that even if defendant's right to counsel was violated, any error in the admission of his statements was harmless since it was admitted without objection at trial and, further, because it contains "exactly the same information" as defendant's taped television interview with respect to which defendant raises no claim of error. While it is true that defendant did not object to the admission of either statement at trial, he did unsuccessfully seek suppression of both statements at the pretrial hearing. In any event, defendant's failure to object to the admission of his statements does not preclude our review on appeal (CPL 470.15, subd 6, par [a]). In our view admission of defendant's statements to the police was not rendered harmless by the receipt in evidence of the taped television interview. In the TV interview, the defendant admitted shooting the victim twice and acknowledged that the motive was to silence the victim who was talking too much about a burglary in Pennsylvania. However, defendant maintained in the interview that his wife had "influenced" him to do it and claimed that he "didn't exactly know what was going to happen, but it wound up I shot him". The defendant expressed remorse in the interview and indicated he would apologize to the victim's parents and ask their forgiveness, given the opportunity. There is a marked contrast between the taped interview and defendant's statements. The disparity and the impact of such details upon a jury is impossible to assess. We cannot conclude that the admission of defendant's statements was harmless error. Therefore, the court's failure to suppress the statements mandates reversal and a new trial. We have considered the other issues presented and find them to be without merit. (Appeal from judgment of Orleans County Court, Doherty, J. — murder, second degree.) Present — Dillon, P. J., Simons, Callahan, Denman, and Moule, JJ.