**Gennaro Torres SANCHEZ, Petitioner,**

v.

**Eugene S. LeFEVRE, Superintendent, Clinton Correctional Facility, and Robert Abrams, Respondents.**

**No. 80 Civ. 58 (MEL).**

United States District Court,
S. D. New York.

May 14, 1982.

Helena Pichel Solleder, New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty. New York County, New York City, for respondents; Beth D. Jacobs, Sp. Asst. Dist. Atty., New York City, of counsel.

LASKER, District Judge.

Gennaro Torres Sanchez pled guilty to a charge of murder in the second degree in the New York state court, following denial of his motion to suppress his confession. He petitions for a writ of habeas corpus on the ground that he did not knowingly waive his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965). The petition is denied.

Sanchez came to the United States from Puerto Rico. His native language is Spanish. At the time of his confession, he had been in the United States for three years, during which time his family had been teaching him to speak English. He cannot read or write English.

At the inception of custodial police questioning, Sanchez was read the *Miranda* warnings in English. He claims that he did not understand those rights due to his inexperience with the English language.

We noted in our ruling of October 2, 1980, that the State had on the face of the confession itself presented a strong case that Sanchez knowingly and intelligently waived his rights, especially in light of the fact

---

that, at the conclusion of the questioning, the warnings were repeated in Spanish and at that point Sanchez acknowledged that they were the same rights which had earlier been read in English and that he had earlier understood his rights. (Confession at 44–45) Despite that fact, however, we ruled that a hearing was necessary since, at several points during the confession, the transcript revealed that Sanchez had difficulty understanding what was said to him or how to say specific words in English, and because of the difficulty inherent in attempting to evaluate Sanchez's grasp of the English language from documentary evidence.

A hearing in this matter has now been held. We have heard the testimony of Sanchez and the officers who took his confession and, most significantly, we have had the opportunity to listen to a tape recording of the actual confession. We conclude from the evidence that Sanchez understood the *Miranda* warnings when they were given in English at the inception of the questioning and knowingly waived his rights. The testimony of the witnesses at the hearing established that, at the time of the questioning, Sanchez had at least a working, everyday grasp of the English language. In this regard, it is significant that he had conversations with the officers in English while being transported from the Hudson County jail and that Sanchez himself acknowledged that he understood English well enough to conduct his everyday affairs. Moreover, the contention that Sanchez did not understand the legalisms contained in the *Miranda* warnings even though he might have understood more mundane parts of the questioning is undercut by the tape recording of his confession, which reveals that Sanchez understood English well enough to respond in detail to questions, even when the questions were asked briskly, and that, when he did not understand particular words or phrases, he did not hesitate to clarify the question before answering. In addition, the details of his description of his activities and his ability to discriminate between concepts in the English language are all revealed by the tape recording of his confession. Sanchez's answers to the questions put to him were by no means limited to "yes-no" responses but instead contained detailed and responsive statements revealing comprehension of the questions.

At the conclusion of the hearing, Sanchez's counsel for the first time presented as support for his claim the case of *People v. Rogers*, 48 N.Y.2d 167, 422 N.Y.S.2d 167, 397 N.E.2d 709 (1979), where the New York Court of Appeals ruled, on the basis of the New York Constitution, that statements made by a defendant who is represented by counsel in an unrelated case made outside the presence of counsel may not be used against the defendant. The case does not support the granting of a habeas writ in federal court, however, since there is no contention that the federal constitution requires the same result. Moreover, it is unclear whether the *Rogers* ruling will be accorded retroactive effect.

After the conclusion of the hearing, Sanchez's counsel wrote to the court offering to submit two unsolicited affidavits from Sanchez's fellow prisoners to the effect that, at the time he prepared his habeas petition, Sanchez needed assistance because he did not speak or understand English well enough. The request is denied. To the extent that Sanchez's later facility with English is relevant, we had an opportunity to observe Sanchez at the hearing about a year after the petition was prepared and found him to understand English at that time well enough to understand the *Miranda* warnings.

Sanchez's petition for a writ of habeas corpus under 42 U.S.C. § 2254 is denied. Certificate of probable cause pursuant to F.R.A.P. 22(b) is granted.

It is so ordered.