OPINION OF THE COURT
Allan L. Winick, J.
Paul Valle has been indicted by the Grand Jury of Nassau County charged with burglary in the third degree. Defendant moves for suppression of statements made to the police on the following grounds:
(1) Defendant did not make a knowing and intelligent waiver of the right to counsel.
(2) Defendant’s arrest was based on less than probable cause.
(3) Defendant had counsel on a pending criminal matter at the time the statements were taken from him and the police failed to contact him. (See People v Rogers, 48 NY2d 167; People v Bartolomeo, 53 NY2d 225.)
A Huntley hearing was held. The People called two witnesses: Police Officer Dunker and Detective Blum. The defense called Dr. Gerald Glass and Sergeant Bates. Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact and reaches the following conclusions of law.
*622 FINDINGS OF FACT
Police Officer Bryan Dunker was working the midnight to 8 o’clock shift on January 1, 1983 in a marked police vehicle. At approximately 5:06 a.m., he received a radio transmission concerning a burglary at the Te-Amo Smoke Shop in Massapequa. As he approached the smoke shop and, when he was approximately 50 feet from the shop, he observed a male pedestrian with dark hair wearing a brown or black leather jacket walking towards him on the same side of the street. This person was carrying something under his arm. Police Officer Dunker stopped his vehicle and the person began to run away from the officer. He gave chase on foot, following the defendant for approximately 1,000 feet into a rear yard. The suspect and the officer entered into a rear yard where the police officer sustained an injury to his left ankle when he fell over some garbage pails. As he went down, he observed the subject going over a six-foot stockade fence. The police officer, fearing that he fractured his ankle, returned to his patrol car. As he was returning to his car, he observed a trail of pennies along the trail the suspect used to flee. Upon arrival at the patrol car, the officer gave other officers a description of the person he had chased and proceeded to the hospital.
Police Officer Dunker subsequently returned to the scene as the day became lighter. He returned to the path of the chase and found additional coins and rolls of coins as well as cartons of cigarettes. Police Officer Dunker then proceeded with a supervising officer to the area on the other side of the six-foot fence over which the defendant was last seen climbing. Upon arrival, Officer Dunker observed a coat and an individual hiding underneath a lowboy trailer. The individual was advised to come out from underneath the trailer. At that time, Police Officer Dunker observed the person and determined that that individual was the same person he had chased some 1½ to 2 hours earlier. The suspect was placed in a patrol car. Police Officer Dunker testified that a Sergeant McHale advised the suspect of the following: “He had a right to remain silent. Anything he said can and will be used against him in a court of law. He had a right to an attorney, and if he *623 couldn’t provide for an attorney, one would be provided for him.” In response to said advisement, the police officer stated that the defendant said he did not know what he was being arrested for.
The suspect, who was identified as the defendant, Paul Valle, was then taken to the Seventh Squad Precinct House. Along the way, defendant Valle was asked what he was doing in the area. He responded by stating that he was walking to his girlfriend’s house. He arrived at the precinct and was interviewed by some detectives, one of whom was Detective Blum. It is also important to note that approximately one hour after Police Officer Dunker turned defendant Valle over to the detective, Dunker began to do his paperwork. At that time, he learned there was an outstanding warrant for Valle’s arrest.
Detective Blum testified that he gave the defendant a Miranda warning rights card (form PDCN 233) which he asked the defendant to read. The detective then testified that the defendant stated he understood his rights and the defendant then signed the card. Subsequently, the detective signed the card. The defendant then gave an oral statement which the detective testified the defendant agreed to have reduced to writing. The detective reduced the statement to writing and the defendant signed it in the detective’s presence. Detective Blum subsequently signed beneath the defendant’s signature. He testified that the defendant stated he understood English and never denied that he was not able to read English. The testimony does not indicate whether defendant was asked if he was able to read English. Detective Blum testified that he never found out, during the taking of the statement, that the defendant had an attorney on another charge. Detective Blum also testified that the defendant made an additional oral statement, the sum and substance of which was that that was the cigar box which contained the money he took out of the smoke shop.
Defendant called Dr. Gerald Glass, an expert witness, who testified next. He is a reading specialist, a professor of education at Adelphi University. He is also the director of the graduate program in reading at Adelphi University and the director of the Reading Learning Disability Cen *624 ter. He has a PhD in reading and statistics and has been teaching reading for 25 years at the college level.
Dr. Glass testified that he administered certain tests to the defendant and concluded that he had a first grade reading level ability, although he had a higher comprehension level. He said, with a margin of error, at most, defendant had a second grade reading level ability. Dr. Glass further testified that the Miranda warnings that the defendant read and signed were on a tenth or eleventh grade reading level, perhaps college level. The witness testified that the defendant could not decode the statement he signed. He also testified that it was very difficult to feign the inability to decode. But Dr. Glass did testify that the defendant stated to him that he went through the eleventh grade of high school.
CONCLUSIONS OF LAW
There are many issues involved here that will be discussed separately.
The first point that must be discussed is defendant’s contention that notice of intent to use a certain oral statement was not given to the defendant within the statutory period and, therefore, its use must be precluded. CPL 710.30 is quite explicit with reference to the notice requirements:
“1. Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, or (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.
“2. Such notice must be served within fifteen days after arraignment and before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause *625 shown, however, the court may permit the people to serve such notice thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion.
“3. In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial unless he has, despite the lack of such notice, moved to suppress such evidence and such motion has been denied and the evidence thereby rendered admissible as prescribed in subdivision two of section 710.70.”
An examination of the People’s voluntary disclosure form indicates only one oral statement that the People intended to use at trial. The form fails to disclose the oral statement made to Detective Blum, “That was the cigar box which contained the money that he took out of the tobacco store”, and the oral statement made to Police Officer Dunker, “He did not know what he was being arrested for.”
Of course, there is always the possibility that the People do not intend to use these statements at trial or that the People intend to use these statements only upon the issue of credibility which would make them admissible without prior notice. (See People v Skokan, 50 AD2d 615.) However, the major question is whether they would be admissible upon the People’s direct case. The People give no reason or excuse for the failure to give proper notice as is required by statute. The statute requires “good cause” to be shown for filing a late notice. Failure of the police department to advise the District Attorney’s office of the police department’s knowledge of these statements is not considered good cause. (People v Hoover, 57 NY2d 908; see People v Spruill, 47 NY2d 869, 870-871; People v Briggs, 38 NY2d 319, 324.) Therefore, the People must be precluded from using the aforesaid two statements because of the People’s failure, pursuant to CPL 710.30, to advise the defendant of their intention to use them.
Parenthetically, even if there was no preclusion both statements would be suppressed, the first for reasons which will become apparent later and the second because it followed incomplete and inadequate Miranda warnings.
*626 This statement (“He did not know what he was being arrested for”) was given by the defendant to Police Officer Dunker in the patrol car while they were traveling to the precinct. The People never gave proper statutory notice indicating they intended to use the oral statement at trial. Testimony by Patrolman Dunker indicated that Sergeant McHale orally advised the defendant of his rights. The law is well settled that a defendant must make a knowing and intelligent waiver of his right to counsel (Miranda v Arizona, 384 US 436). The evidence elicited at the hearing indicated that while the officer gave some warnings, the warnings were incomplete. The officer did not ask the defendant if he understood these rights nor did he determine if the defendant, upon his understanding, wanted to waive his rights and was willing to answer questions before talking to a lawyer or having one present. In People v Hutchinson (59 NY2d 923), the court reversed a defendant’s conviction and suppressed his statement under similar circumstances. The court (p 924) stated that the suppression was based “on the failure of the officer giving appellant his constitutional preinterrogation warning to have included advice that appellant was entitled to the assistance of counsel during his questioning by the officer, an aspect of the warnings to which appellant concededly was entitled.”
The defendant, in the case at bar, was not warned of his right to have an attorney present while he was being questioned by the police officer. Although he was advised of his right to an attorney generally, an integral part of these preinterrogation warnings is to determine whether the defendant knowingly and intelligently waived his rights. It is of utmost importance to advise a person of his inalienable right to have an attorney present at those questionings. Not only that, the police officer must also ask the defendant whether he understands these rights and wishes to answer questions without this attorney present.
A police officer who makes an arrest must advise a defendant fully of each and every right and only then can the officer proceed. These rights are divided into two parts: acknowledgment and relinquishment. In essence, a defendant must not only acknowledge his understanding of *627 these rights, but must also go a step further and relinquish them. Therefore, the court must suppress this oral statement because the oral advisements were incomplete.
The main area of concern is whether the defendant made a knowing and intelligent waiver of the right to counsel with reference to the oral statement given to Detective Blum that he subsequently transcribed into written form. This also applies to the additional oral statement that the defendant gave to Detective Blum which the court has already precluded the People from using. (CPL 710.30.) What makes this different is that the detective only told the defendant to read a standard Miranda card and did not, in addition, orally advise the defendant of his constitutional rights. The defendant did state to the detective, in response to a question, that he understood his rights.
The constitutional rights of a defendant are always examined by the court to determine if they were properly safeguarded. Miranda (supra) speaks of a knowing and intelligent waiver of a defendant’s right to counsel. Court decisions require that (1) the defendant understand that he has a right to counsel and (2) the defendant make an actual relinquishment or waiver of that right to counsel. (North Carolina v Butler, 441 US 369, 373.) As a matter of fact, the language of police department form PDCN 233, which it is alleged that defendant read, is divided into two separate questions. First, “Do you. understand?” After an affirmative response, the police officer asks, “Now that you understand, are you willing to answer questions before talking with a lawyer or having one present?” It is necessary that the People prove that the defendant understood his rights and actually relinquished these rights. “It is well settled that at a pretrial Huntley hearing the burden of proof is upon the People to prove beyond a reasonable doubt the voluntariness of the statements (People v Holland, 48 NY2d 861).” (People v Whittle, 96 AD2d 542; see, also, North Carolina v Butler, supra, pp 372-373.)
From North Carolina v Butler (supra, p 373), we can infer from the language of the United States Supreme Court that the totality of circumstances test is the proper test. The court states (p 373): “The courts must presume that a defendant did not waive his rights; the prosecution’s *628 burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.” (See, also, People v Baez, 79 AD2d 608, 609.)
After considering the totality of the circumstances in the case at bar, the court concludes that the People did not sustain their burden that the defendant made a knowing and intelligent waiver of his rights. First of all, the defendant was handed the Miranda warnings card by the detective, PDCN 233. He was then asked to read the card by Detective Blum. In response to the detective’s question whether the defendant understood his rights, defendant answered in the affirmative. He then signed his name next to the question, “Do you understand?” Below his signature, the following appears: “Now that you understand, are you willing to answer questions before talking with a lawyer or having one present.”
The detective then proceeded to take the oral statement. It must be noted that at no time did the police officer read to the defendant the contents of the card which the defendant signed. During the course of the hearing, the defendant produced Dr. Glass, who qualified as a reading comprehension specialist. His credentials were not challenged by the People. The net effect of this expert’s testimony at the hearing, at the very least, was to create a reasonable doubt in the mind of the court that the defendant possessed the ability to read and thereby was not able to comprehend. It is entirely possible if the detective read it to him he would have comprehended what was read to him. But in view of the expert’s testimony that he could not read beyond a second grade level, the court must doubt that the defendant could understand the nature of the Miranda warnings under the procedures adopted by the police department, and certainly that he knowingly waived his rights.
The People argue that the defendant had knowledge of the workings of the criminal justice system due to the fact he has a prior criminal record. They argue that this court should follow the holding in People v Rooney (82 AD2d 84.0). The Rooney court stated that defendant, after he was given his rights, nodded his head affirmatively. This, coupled with at least one previous felonious brush with law is *629 a reliable indication that he knew what he was doing. Rooney is distinguishable from the case at bar for the following reasons:
(1) In Rooney the Miranda warnings were read to the defendant, where in this case the defendant was handed a card and was told to read it.
(2) Inherent in the Rooney case is that all of the Miranda warnings were read to the defendant, including the question of whether the defendant actually wanted to waive his rights. In the instant case, the so-called Miranda card was signed by the defendant at the conclusion of the first part of the warning and above the section dealing with the waiver by the defendant of his Miranda rights. The question from Detective Blum was, “Do you understand your rights?” No question was posed whether he waived these rights. From the totality of the circumstances, it is impossible to determine whether the defendant’s affirmative response applied to advisements appearing above his signature or to both the advisement and waiver sections of the card. All of this presupposes that the defendant was able to read. Therefore, the court cannot conclude, beyond a reasonable doubt, that the defendant waived his rights even though he responded affirmatively to the question and even though he may be experienced in the criminal justice system. The fact that he gave the statements is not sufficient in itself to constitute a waiver.
Defendant also raised a Rogers issue (People v Rogers, 48 NY2d 167). Reviewing the testimony, which the court has credited, the arresting officer did not learn of the existence of a warrant until at least one hour after he turned the defendant over to the detective for questioning. While there was no testimony as to the length of time it took to complete the questioning of the defendant, there is no indication that the police officer imparted his knowledge to the detective until after the conclusion of the questioning. Because of the determination of the court to suppress the statements, no determination is made of whether the knowledge of the police officer of the existence of the warrant can be constructively charged to the detective. (See People v Servidio, 54 NY2d 951.)
*630 The court also notes that after reviewing the testimony, there is ample justification for determining that there was probable cause for the police to arrest the defendant.
It is, therefore, the order of the court that all of the oral and written statements made by the defendant to the police, not already precluded, must be suppressed.