OPINION OF THE COURT
Joseph Harris, J.
In People v Bartolomeo (53 NY2d 225, 229), the Court of Appeals held: “Where to the knowledge of the interrogating officer a suspect being questioned had been arrested by the same law enforcement agency nine days previously on an unrelated charge, statements obtained in consequence of the interrogation must be suppressed if in fact the suspect is represented by an attorney with respect to the unrelated charge even though the fact of such representation is unknown to the officer.”
However, in footnote 1 the court stated the following caveat: “We intimate no views as to what might be the consequence in another case in which the defendant’s prior arrest is remote in time or place or is made by officers of another law enforcement agency” (People v Bartolomeo, 53 NY2d 225, 229, n 1, supra).
The instant case raises the issue of the “legal” effect of a prior charge, unquestionably remote in time, upon questioning by the police with respect to a current charge, as *623 well as the “factual” threshold question as to when, if ever, a prior charge ceases to trigger the Bartolomeo shield.[1]
On September 11, 1983, at approximately 3:30 a.m., Officer Richard Carroll of the Albany Police Department responded to a radio call respecting a fight at the Rhum Runners Lounge in the City of Albany. At the scene he observed an alleged “victim” sitting in an automobile, bleeding from the head. He spoke to an eyewitness to the altercation, one Brian Grant, who informed him that several persons, one of whom he identified as a person named “Marsh”, had assaulted the victim and himself with a crowbar and a baseball bat. A description of the assailants and their vehicle was received and placed over the air.
Thereafter “Marsh” was apprehended; upon interview by Carroll, he informed the police officer that one Charles Hilderbrandt, the defendant herein, was also involved in the assault. This information, as well as information reflecting that the “victim” was hospitalized at the Albany Medical Center Hospital, suffering from a fractured skull, was incorporated into an “Albany Police Department Crime Report” which was received into evidence as People’s exhibit No. 2.
At around 6:40 p.m., later that day, Police Officer Thomas McWatters, after reading the crime report and being informed by a fellow officer that Charles Hilderbrandt had been implicated in the assault by a coparticipant who had been apprehended, went to Hilderbrandt’s residence where he was informed by Hilderbrandt’s roommate that Hilderbrandt was not present, but who voluntarily permitted McWatters to enter and search the premises. McWatters found Hilderbrandt, fully clothed, hiding in a bathtub behind a drawn shower curtain. Hilderbrandt was thereupon arrested. The court finds there was probable cause for the arrest.
As he was thereafter being led away, and without any questioning on the part of any police officer, Hilderbrandt spontaneously blurted out: “This is about that fight last night, isn’t it?” The motion to suppress this statement is denied. McWatters responded that he didn’t want to hear *624 any more, took Hilderbrandt outside to the police vehicle and read him his Miranda rights. The court finds that these rights were administered to the defendant fully and properly, that the defendant understood them all fully, and waived all said rights — knowingly, intelligently, and voluntarily. Certain conversation thereafter ensued between the defendant and McWatters respecting the fight at the Rhum Runners Lounge. During this conversation McWatters was unaware of the existence of any warrant for the defendant’s arrest nor was he aware of any charges pending against the defendant.
Thereafter the defendant was brought to the police station and booked. During the booking procedure a warrant check uncovered for the first time that a “bench warrant”, still outstanding, had been issued against the defendant on April 3, 1981 (some 2Vis years before the current arrest) by Albany Police Judge Thomas Keegan for what appeared to be a charge of petit larceny.
At 7:30 a.m. on September 12, 1983, Detective Richard Powell was informed by Officer Adriance that the defendant, who was then in the police cell block waiting for Albany Police Court to open so he could be arraigned, wanted to make a statement telling his side of the story. Powell was not aware at this time nor at the time of defendant’s subsequent written statement that the aforementioned bench warrant existed, nor is there evidence that Officer Adriance knew of the existence of said bench warrant. The first thing Powell did was to readvise defendant of his Miranda rights. These rights again the court finds to have been fully and properly administered, to have been fully understood by the defendant, and to have been waived by him — knowingly, intelligently and voluntarily. Thereupon the defendant gave the written statement received into evidence as People’s exhibit No. 1.
With respect to the “bench warrant” it appears, through the testimony of the defendant himself, that sometime in March, 1981 he was arrested for petit larceny and arraigned in Albany Police Court; at arraignment he was automatically assigned a Public Defender, whose name he never knew, pleaded guilty to disorderly conduct, and was sentenced to pay a fine of $100. He believes his mother paid *625 the fine that very day of his guilty plea but apparently the records of Albany Police Court failed to reflect this and on April 3, 1981, Judge Keegan issued the subject bench warrant for nonpayment of the fine.
In Bartolomeo (53 NY2d 225, supra), the arrest for the “unrelated charge” which triggered the defendant’s Hob-son and Rogers rights (People v Hobson, 39 NY2d 479; People v Rogers, 48 NY2d 167) took place only nine days before his interrogation on the homicide charge for which he was being questioned, and was for the quite serious crime of arson. In addition, said arson charge was still “outstanding”, “pending”, and “unresolved” at the time of the interdicted questioning on the homicide charge.
In the instant case the “unrelated charge” alleged by the defendant to give rise to a right not to be permitted to waive counsel in the absence of counsel arose 2Vfe years prior to the instant questioning; it involved a minor matter of petit larceny; it had been long resolved by a guilty plea to disorderly conduct (a violation) and a sentence to pay a fine of $100,[2] so that it was certainly not pending or outstanding on September 12, 1983. Under the circumstances, it must reasonably be held that counsel who entered the case on arraignment had certainly exited by the time of defendant’s questioning on September 12,1983, upon the new charges.
It is obvious from the case law that Bartolomeo rights are not, like a diamond, forever. They cease when the rationale giving rise to them ceases. This rationale is that an unrepresented defendant in custody, who has either requested counsel in the matter upon which he is being interrogated or is being represented by counsel on some recent material or substantial unrelated charge has indicated his own belief that without legal advice he is not competent to deal with those in whose custody he is being held. (See People v Rogers, 48 NY2d 167, supra; People v Cunningham, 49 NY2d 203; People v Skinner, 52 NY2d 24.) This is certainly not applicable in the instant case where the entry of counsel took place 2V2 years ago, for the purpose of arraignment, plea bargaining and plea in a petit larceny *626 charge which was reduced to disorderly conduct, for which the defendant was sentenced to pay a fine of $100, and which charge can accordingly no longer be considered pending.[3] Whether or not the $100 fine was ever paid is completely irrelevant to the legitimate purposes of the Bartolomeo rule, which is to enhance the meaningfulness of the constitutional right to counsel. To rule otherwise would be to elevate form and semantics over substance, and to hold that once a criminal defendant is represented by counsel, regardless of remoteness of time and immateriality of charge, and regardless of the immateriality of the reason by which the charge “hang’s on”, he cannot for all intents and purposes be interrogated at any time in the future unless he waives his right to counsel in the presence of counsel. Such is a result unnecessary to the enhancement of the meaningfulness of the constitutional right to counsel, with no commensurate benefit to society. (See People v Kazmarick, 52 NY2d 323; People v Servidlo, 54 NY2d 951; People v Smith, 54 NY2d 954.)
The court accordingly finds Bartolomeo inapplicable to the instant case.[4] Having previously found that Miranda warnings were fully and properly administered at all appropriate times, that they were fully understood by the defendant who knowingly, intelligently and voluntarily waived them, all motions to suppress statements by the defendant to law enforcement officers are denied, as is also the motion to dismiss the indictment for insufficiency of legal evidence before the Grand Jury.
*627 The foregoing constitutes the findings of fact and conclusions of law of this court. All findings of fact and conclusions of law are made beyond a reasonable doubt.

. Another issue in the instant case is whether or not the predicates required for Bartolomeo protection are present.

. Which indeed the defendant contends was paid even before the issuance of the bench warrant of April 3, 1981.

. Very few criminal matters ever completely terminate, with all “i’s” dotted and all “t’s” crossed. Some immaterial or inconsequential loose end always seems to “hang on.” But “hanging on” is not to be equated with “pending.” The effect of a remote and minor unrelated charge no longer in a real sense pending, with respect to invocation of the Bartolomeo rule, can be determined only by measuring it against the purpose of the rule. In the instant case there is clearly no relationship between the defendant’s alleged failure to pay a $100 fine 2 Vi years prior to the probative events herein and his ability to waive counsel 2Via years later.

. A further grounds for holding Bartolomeo not applicable in the instant case is that the court finds that neither of the two interrogating officers knew at the time of interrogation that there was another charge pending against the defendant, even if it should be held that the disorderly conduct charge to which the defendant pleaded in March, 1981, was still pending on September 11 and 12, 1983. The court further finds that the absence of such knowledge was not the result of subterfuge on the part of the police to conceal such knowledge or to overlook the obvious. (See People v Servidio, supra.)