OPINION OF THE COURT
Frank J. LaBuda, J.
The defendant, Howard Greene, was indicted by a Sullivan *277 County Grand Jury on July 11, 2001 and charged with rape in the first degree in violation of Penal Law § 130.35 (2), rape in the second degree in violation of Penal Law § 130.30, sexual abuse in the second degree in violation of Penal Law § 130.60 (2), four counts of incest in violation of Penal Law § 255.25, five counts of endangering the welfare of a child in violation of Penal Law § 260.10 (1), three counts of sodomy in the first degree in violation of Penal Law § 130.50 (1), two counts of sodomy in the second degree in violation of Penal Law § 130.45, sexual abuse in the first degree in violation of Penal Law § 130.65 (1), intimidating a victim in the third degree in violation of Penal Law § 215.15 (1), menacing in the second degree in violation of Penal Law § 120.14 (1), and sodomy in the third degree in violation of Penal Law § 130.40.
Pursuant to the defendant’s request for omnibus motion relief, a Huntley hearing was held on August 29, 2001 wherein this court upon review of the testimony of the witnesses called by the People and documentary evidence submitted made the following findings of fact beyond a reasonable doubt.
On February 10, 2001 a “hotline report” was received by the Sullivan County Department of Social Services from the Albany reporting center. On February 10, 2001 New York State Police Investigator Nohawecka was advised by a senior caseworker from the Sullivan County Department of Social Services that the biological daughter of the defendant, Howard Greene, who then was at the Four Winds Rehabilitation Center near Albany, New York, had made allegations regarding sexual abuse and rape by the defendant herein. As a result of that information Investigator Nohawecka interviewed the child victim who is now 16 years old, and interviewed other members of the family regarding the allegations made. The New York State Police investigation, in conjunction with the Sullivan County Family Violence Response Team, resulted in the instant 21-count indictment which charges an ongoing course of rape, sodomy and sexual abuse commencing in or about July 1996 at the defendant’s residence in the Hamlet of Smallwood, Town of Bethel, Sullivan County, New York, when the daughter was 11 years old and continuing through the summer of 1999. The allegations included both forcible rape and sodomy as well as statutory sodomy, and forcible and statutory sexual abuse. As a result of the information obtained through his investigation, Investigator Nohawecka on February 14, 2001 arrived at the Greene residence at approximately 2:00 p.m. and met with the *278 defendant on the front porch of his home. The investigator then only advised the defendant that he was conducting an investigation and did not advise the defendant of the specifics of the investigation nor the allegations made nor that he was the target of the investigation. The defendant agreed to accompany the investigator to the New York State Police barracks and did so without being arrested, handcuffed or restrained. At approximately 2:25 p.m. the defendant, with the investigator, arrived at the State Police barracks and was brought into the interview room. There, the defendant immediately engaged in a monologue that rambled on for approximately one-half hour without being questioned by the investigator. When the investigator tried to interject, the defendant continued his monologue for approximately another 45 minutes talking about his various encounters with prostitutes in New York City and the fact that many children these days were falsely accusing their parents of sexual crimes. Finally, after one hour and 15 minutes, the defendant stopped suddenly and asked the investigator why he was at the barracks. At that time, the investigator advised the defendant of the allegations and that he was being arrested for sodomy regarding the abuse of his daughter. The defendant was read his Miranda rights, fully acknowledged them and agreed to talk to the investigator. The defendant also consented to a search of his vehicle and a search of his premises by consenting to and signing a written consent form provided by the investigator. A 9 mm German Luger pistol was retrieved from the defendant’s premises and is the alleged modus involving the threatening of a witness by force and intimidation. The investigator testified further that the defendant appeared cooperative and was clearly coherent and responsive to any questions that had been asked by the investigator including his Miranda rights.
The People next called Rebecca Skoda from the Sullivan County Department of Social Services. Ms. Skoda has a Master’s degree in social services and is part of the Sullivan County Family Violence Response Team. She testified that pursuant to the Social Services Law and her duties and assignments as a caseworker, she was tasked with conducting a personal “face-to-face” interview of the defendant. On March 8, 2001 Ms. Skoda in the performance of her routine duties as a social worker was at the Sullivan County Jail to interview another client and not the defendant. She had earlier in the day, in the jail, seen the defendant’s counsel and knew that the defendant Howard Greene was represented by Stephan Schick, *279 Esq., the Executive Director of the Sullivan County Legal Aid Bureau, Inc. By happenstance, Ms. Skoda saw the defendant in the interview room area of the Sullivan County Jail and decided to interview him at that time. She advised Mr. Greene that he was the subject of a hotline abuse call and that she knew that he had an attorney. The defendant agreed to speak to Ms. Skoda even though he said he had an attorney. The defendant spoke with Ms. Skoda and made various statements and admissions to her. Ms. Skoda testified and it is conceded that the March 8, 2001 interview of Mr. Greene was not prearranged by anyone in her department, the State Police or District Attorney’s office. Ms. Skoda also testified that when she interviewed Mr. Greene at the Sullivan County Jail she was not working in conjunction with the New York State Police or the District Attorney’s office, but was interviewing the defendant pursuant to the mandates from the Social Services Law. It is also conceded by the defense that the interview by Ms. Skoda was voluntary in that it was not the product of any threats or coercion by the caseworker.
The purpose of the Sullivan County Family Violence Response Team (hereinafter referred to as SCFVRT) is to avoid duplication of the interview process of victims, witnesses and others in conjunction with allegations of physical and sexual abuse of family members. Although information is shared, the work done by the Department of Social Services caseworkers and counselors is not part of any criminal investigation even though it may result in criminal charges or the production of evidence which may be used for prosecutorial purposes either in Family Court or in Criminal Court. The question before this court is to what extent does the interrogation of an inmate in a criminal confinement, instituted by a Department of Social Services caseworker and member of the SCFVRT, who has been charged with a felony crime, arraigned and assigned counsel whom the interviewer is aware of, require Miranda warnings and the waiver of said warnings in the presence of counsel under People v Rogers (48 NY2d 167).
The court’s analysis starts with the Court of Appeals test for determining custodial interrogation and Miranda warnings in a prison context pursuant to People v Alls (83 NY2d 94 [1993]). Under that test the circumstances at the time of the defendant’s interview by Ms. Skoda at the Sullivan County Jail did not pose the danger of coercion from interaction of custody and official interrogation. In People v Mancini (213 AD2d 1038 [4th Dept 1995], lv denied 85 NY2d 976 [1995]), the *280 Court held that statements made to a child protective services investigator were properly admitted in criminal prosecution where the defendant was not in custody when he made the statements to the investigator. It must also be noted that the defendant is not claiming that his physical and/or mental condition was impaired to any degree by his confinement at the Sullivan County Jail nor by his interviewer. The more perplexing issue is, even though the defendant was not the subject of custodial interrogation, must his statements to the caseworker be suppressed because he was charged with a felony crime, arraigned on a felony complaint and was represented by counsel on those charges and the interviewing caseworker who was aware of counsel’s representation could obtain information which would ultimately be shared with law enforcement and the prosecution.
The right to counsel once a defendant has been charged to be present at any interrogation by public servants so indelibly attaches that it cannot even be waived in the absence of counsel. (People v Rogers, 48 NY2d 167 [1979]; People v Hobson, 39 NY2d 479 [1976]; People v Peoples, 80 AD2d 722 [4th Dept 1981] [felony complaint had been filed against the accused]; People v Walls, 74 AD2d 833 [2d Dept 1980] [felony complaints had been filed against the accused]; accord, People v Samuels, 49 NY2d 218 [1980].) Furthermore, it is so fundamental that it is not subject to a harmless error analysis and may even be raised for the first time on appeal. (People v Hilliard, 73 NY2d 584 [1989]; People v Sanders, 56 NY2d 51 [1982].)
However, the Rogers holding (supra) is not dispositive to the issue herein. 18 NYCRR 432.2, in its pertinent part, in establishing the responsibilities of the child protective service in the Department of Social Services requires under subdivision (b) (3) (ii) (a) a “face-to-face” interview with the subject of the report and family members of such subjects, including children named in the report. The child protective services is further tasked under subdivision (b) (3) (vi) with “assess [ing] whether the best interests of the child require Family Court or Criminal Court action and * * * initiating] such action, whenever necessary.” The statutory purpose for section 432.2 is not prosecutorial but is concerned with “the best interest of the child.” The procedures and information obtained by the caseworkers are used for a myriad of social services and Family Court purposes.
Rebecca Skoda, employed by the child protective services, is a member of the multidisciplinary “FVRT” whose purpose is to *281 protect child victims from abuse and to facilitate the investigative process by coordinating interviews with victims, thereby “diminishing the trauma on the child by avoiding multiple interviews.” (Mem of Senate in Support, 1999 McKinney’s Session Laws of NY, at 1600.) The statutory inception of multidisciplinary teams originated because of the availability of funding under the Federal Child Abuse Prevention and Treatment Act Amendments of 1996, aimed at “improving] upon the investigation, oversight, and accountability of local child protective services agencies in New York State.” (Mem of Legis Representative of City of NY, 1999 McKinney’s Session Laws of NY, at 1600.)* Although it cannot be gainsaid that information obtained by child protective service workers may often lead to investigation by police authorities as well as criminal prosecutions, it does not make the caseworker either a police person or an agent of the police. In People v Hussain (167 Misc 2d 146, 148 [1996]), that court held that a caseworker from the Child Welfare Administration was “not a law enforcement officer” for the purposes of providing CPL 710.30 notice.
Notwithstanding Rogers (supra), this court cannot impose upon caseworkers the responsibility of Mirandizing all targets of hotline sexual abuse investigations. To do so would impose law enforcement restrictions on caseworkers who must on a daily basis deal with the myriad of social services consequences of wrongdoing or criminal activity perpetrated against children or other family members. The statutory dichotomy between the caseworker and law enforcement is clear and section 432.2 does not anticipate making police officers or police agents out of caseworkers. The mere fact that Sullivan County enjoys a monetary grant to establish the Sullivan County Family Violence Response Team, which may at times place caseworkers with police investigators in interviewing victims, witnesses and others, does not in every instance make a caseworker who is independently performing his or her statutory duties under the Social Services Law a police agent. In People v Davila (223 AD2d 722 [2d Dept 1996]), the Appellate Division, Second Department, found that a suppression court had correctly denied the defendant’s motion to suppress inculpatory state *282 ments to a caseworker for the child welfare administration in Kings County where the defendant was not in custody when he met with the caseworker in the office of the public school. The caseworker was not a law enforcement official or agent of such person and there was no indication that the statement was not voluntarily made (see CPL 60.45 [2]; People v Tankleff, 199 AD2d 550, affd, 84 NY2d 992; People v Clauss, 104 AD2d 725).
Based upon the above, all statements made to caseworker Ms. Skoda as well as to the New York State Police investigator prior to Miranda and all statements made subsequent to Miranda were voluntarily made and are admissible at trial and the instant motion to suppress said statements is denied.
Exhibit A
“The Sullivan County Department of Family Services (local district) proposes to utilize 18 month NYS OCFS grant funding to further the development and community integration of the county’s Family Violence Response Team (FVRT), and to prepare the county for the development of a Child Advocacy Center (CAC). The SCDFS would retain an Administrative Coordinator/Family Advocate (AC/FA) to:
“1. Establish or enhance community linkages with child’s family advocates, domestic violence agencies, schools, local police agencies, perpetrator/victim treatment/education agencies via creation of a community planning group.
“2. Develop comprehensive protocols and procedures for the investigation of child abuse, including interviews designed to minimize the trauma to victims and family.
“3. Develop a database tracking system to monitor service delivery and evaluate outcomes for planning purposes.
“4. Prepare the community, via broad-base planning committee for establishment of a neutral sited, child/family oriented Child Advocacy Center.”

 In keeping with the purpose of the Child Abuse Prevention and Treatment Act, a February 23, 2000 “Letter of Participation and Support for Sullivan County Proposal for OCFS Start-up Funding for the Family Violence Response Team” indicates the agreement between local team members in Sullivan County and is attached hereto and made a part hereof as court’s exhibit A.