OPINION OF THE COURT
Susan T. Kluewer, J.
*573 Defendant’s motion to suppress a statement made to police during “processing” is granted.
Defendant is accused of criminal possession of marijuana in the fifth degree, a class B misdemeanor (see Penal Law § 221.10 [1]). It is alleged in the factual part of the District Court information that on June 6, 2004, at about 5:15 p.m., defendant “was observed knowingly and unlawfully smoking what is believed to be a marijuana cigarette while seated in [a] vehicle.” There is no indication that the People ever served a “710.30” notice (see CPL 710.30) advising of an intent to use any statement against defendant. The parties have, however, stipulated that there should be a hearing to determine whether a statement defendant made during “processing” should be suppressed as the product of coercion, or because of a failure to give Miranda warnings. The only witness to testify at the hearing conducted before me on November 1, 2004 was Police Lieutenant Michael McGovern. He did so on the People’s behalf.
The evidence adduced at the hearing establishes that police arrested defendant on June 6, 2004 at about 5:15 p.m. It also establishes that at 12:40 a.m., on June 7, 2004, some 71/2 hours after the arrest, Lieutenant McGovern, who knew why defendant had been arrested, processed him. During the course of that processing, Lieutenant McGovern asked defendant a series of “routine” questions. Those questions were displayed on a computer screen as Lieutenant McGovern asked them. The questions were then printed, together with the defendant’s answers, on “PDCN form 79.” The questions Lieutenant McGovern asked are: “Are you in good health?/Do you need medical attention? Do you have any injuries?/Describe?/How received? What and how much alcohol did you consume? What drugs do you use/When last used?”
Lieutenant McGovern testified that the “PDCN form 79” is prepared in every case, and that the questions are asked to determine if an arrestee is in need of medical help, or is impaired by alcohol or drugs. The inquiry is made “right before the prisoner is released from custody or before he is transported to police detention” in order to “determine the fitness of the defendant” for release or detention. Lieutenant McGovern further testified that no one made any threats or promises to defendant at the time he processed him, and he did not tell defendant, either that he was required to answer the questions, or that he could decline to do so. Finally, Lieutenant McGovern testified that Miranda warnings, as a matter of routine, are not *574 given before these questions are asked of an arrestee, and the People concede that no Miranda warnings were given to defendant at any time during the 7½ hours he was in police custody.
The first three groups of questions put to defendant produced nothing pertinent here. The last group, however, elicited the answers: “I just smoked weed///About five o’clock.” The People obviously intend to use the questions and these answers as part of their proof of defendant’s guilt. Inasmuch as there is absolutely no evidence that these answers result from threats, promises or any other kind of coercion, defendant now seeks their suppression solely on account of police failure to precede the questions that produced these answers with Miranda warnings. The People posit, in turn, that, because the questions are nothing more than routine processing, or “pedigree” questions, Miranda warnings are not required. I disagree.
The People are prohibited from using against a defendant any statement he or she makes during custodial interrogation unless they can demonstrate “the use of procedural safeguards effective to secure the privilege against self-incrimination” (Miranda v Arizona, 384 US 436, 444 [1966]). While “routine booking” questions constitute custodial interrogation, answers to those questions fall outside the protections of Miranda “if they are ‘reasonably related to the police’s administrative concerns’ ” (People v Rodney, 85 NY2d 289, 292 [1995] [citations omitted]). Questions directed at a defendant’s physical needs may also come within the “pedigree exception” to the Miranda rule (see People v Rogers, 48 NY2d 167 [1979]). The People may not, however, rely on the exception if the questions are not directed solely at administrative concerns or if the questions, “though facially appropriate, are likely to elicit incriminating admissions because of the circumstances of the particular case” (People v Rodney, supra at 293).
Unlike a question about, for instance, “medicines,” the question “What drugs do you use?” connotes controlled substances that are, for the most part, unlawful to possess. The very asking of that question is thus likely to elicit “information of a criminal nature” (see People v Rivera, 26 NY2d 304, 309 [1970]). Moreover, the administrative usefulness of an answer to an open-ended question that assumes drug use is far from clear. Indeed, a determination of “fitness” might more wisely rest on police observations of an arrestee than on an answer to a question directed, hours after an arrest, at the person who might be impaired. In any event, the fact that this question, and the *575 follow-up question “When last used?” are asked in every case does not justify using the responses obtained in this case against defendant at trial. Even if these questions are deemed facially appropriate, they are here particularly likely to elicit relevant, incriminating responses since “they [go] to the very heart of the crime charged” (People v Antonio, 86 AD2d 614, 615 [2d Dept 1982]; see People v Rodney, supra). While the police are free to use the answers for administrative purposes, since they observed none of the procedural safeguards necessary to secure defendant’s jealously guarded privilege against self-incrimination (see People v Rogers, supra; see also Miranda v Arizona, supra), the People may not use them as part of their case-in-chief at trial.