■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVIER TORRES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered December 19, 1980, convicting him of murder in the second degree, and attempted robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of defendant's motion which sought suppression of a certain statement to the police. Judgment affirmed. Early on the morning of October 30, 1979, two assailants attempted to rob the proprietor of a laundromat located on Fourth Avenue in Brooklyn. During that incident the owner was stabbed and died as a result of his injuries. At a suppression hearing, defendant Javier Torres, the alleged lookout for the two assailants, challenged, *inter alia,* the admissibility of his December 14, 1979 statement to Detective Fred Hazel. The sole evidence presented on this issue consisted of the detective's testimony. Almost one month after the murder, the police received information that Torres, who was then in custody on an unrelated robbery charge, wished to speak with them about the murder. Torres told Detective Vega that he had seen two people, whom he knew from the neighborhood, enter and leave the laundromat at the time of the crime. Detective Vega relayed this information to Detective Hazel, the officer assigned to the murder case. Detective Hazel thereafter interviewed Torres at the Rikers Island jail. At the interview, Torres reiterated the information he had given to Detective Vega. Torres agreed to and accompanied Detective

Hazel to the 67th Precinct in Brooklyn, to view some photographs. However, Torres did not recognize any individual as one of the assailants. Subsequent to his release on bail, Torres advised Detective Hazel that he would contact the police if he saw the assailants on the street. In addition, Torres again agreed to go, and went with Detective Hazel to a Manhattan precinct to view photographs. Torres failed to identify anyone. Thereafter, Detective Hazel had several telephone conversations with Torres, and each time Torres indicated that he had not seen the assailants. On December 14, 1979, approximately two weeks after Detective Hazel's initial interview with Torres, the police received an anonymous telephone call which raised doubt as to whether Torres was withholding information from the police. Detective Hazel telephoned Torres and requested to speak with him. Detectives Hazel and Rosario then proceeded to Torres' home, and upon request Torres agreed to accompany the officers to the 68th Precinct. At the police station, Torres again related to Detective Hazel the events he had allegedly witnessed on the day of the murder. During the interview, Detective Hazel, observing that Torres appeared very nervous, became suspicious that Torres was not telling the truth. Detective Hazel read Torres his *Miranda* rights, which Torres waived, and knowing it to be a lie, the detective told Torres that the police had received an anonymous telephone call that Torres had actually committed the murder. Torres first denied that he had committed the murder, and claimed that he was just in the area. When Detective Hazel again stated that Torres was lying and that people had indicated that Torres had gone into the store, Torres stated that he would tell the truth. Torres then admitted that he was a lookout for the two men who had gone into the store, that he knew that one of the men always carried a knife, and that after the killing, one of the men had admitted to Torres that a man had been killed. After Torres identified photographs of the two assailants, he was placed under arrest. According to Detective Hazel's notes, Torres' admissions were made within 45 minutes of his arrival at the police precinct. Detective Hazel specifically testified that, while Torres had become a suspect during the December 14, 1979 interview, he was still free to leave and would have been permitted to do so, if he had so requested. In similar situations, suspects whom Detective Hazel had falsely accused of crimes and had advised of their rights, were free to leave upon request and had done so. Criminal Term denied that branch of Torres' motion which sought suppression of his December 14, 1979 statement to Detective Hazel, concluding, *inter alia,* that since Torres had not been in custody at that time, his right to counsel had not been violated under the principle enunciated in *People v Rogers* (48 NY2d 167). After a jury trial, during which Detective Hazel testified as to the December 14, 1979 inculpatory statement made by Torres, Torres was convicted of murder in the second degree and attempted robbery in the first degree. On this appeal, Torres contends, *inter alia,* that contrary to Criminal Term's determination, he was subjected to a custodial interrogation by Detective Hazel on December 14, 1979. Accordingly, since he was then represented by counsel on a pending unrelated charge, Torres claims that his statement was taken in violation of his right to counsel and should have been suppressed on that ground. We disagree. The Court of Appeals in *People v Rogers* (*supra,* pp 170-171) held that the police may not question a defendant who is in custody and represented by counsel on pending matters, on matters related or unrelated to those pending matters, in the absence of his counsel, unless there is an affirmative waiver, in the presence of counsel, of the defendant's right to counsel. In *People v Bartolomeo* (53 NY2d 225, 229), the court extended the principle of *Rogers* (*supra*) by holding that "[w]here to the knowledge of the interrogating officer a suspect being questioned had been arrested by the same law enforcement agency nine days previously on an unrelated charge, state-

ments obtained in consequence of the interrogation must be suppressed if in fact the suspect is represented by an attorney with respect to the unrelated charge even though the fact of such representation is unknown to the officer". The court noted that the officer with knowledge of the outstanding charge is under an obligation to inquire whether the defendant is represented by an attorney on that charge. "Having failed to make such inquiry, the [officer is] chargeable with what such an inquiry would have disclosed — namely, that defendant did have an attorney acting on his behalf. With such knowledge [the officer is] foreclosed either from questioning defendant or from accepting his waiver of counsel's assistance unless his attorney [is] present" (53 NY2d 225, 232, *supra*). However, the determination in *Rogers* (*supra*) and *Bartolomeo* (*supra*) apply to custodial interrogations of defendants (see *People v Rogers*, 48 NY2d 167, 169, *supra; People v Bartolomeo, supra;* see, also, *People v Folnsbee,* 96 AD2d 623; *People v Hauswirth,* 89 AD2d 357, 358-359). While in the instant case there can be no doubt that Detective Hazel had knowledge that Torres had been recently arrested on an unrelated charge and an inquiry would have disclosed that Torres was represented by counsel on that charge, we find that there is sufficient evidence in the record to support Criminal Term's determination that Torres was not in custody at the time he made a statement to Detective Hazel on December 14, 1979. The suppression hearing testimony indicates that prior to his statement on December 14, 1979, Torres, who had originally initiated contact with the police, was a co-operative witness. He had previously been questioned by the police and had viewed photographs at two precincts in an effort to identify the two assailants. The fact that Torres was interviewed at a police station on the night of December 14, 1979 does not necessarily mean that he was in custody (*People v Yukl,* 25 NY2d 585, 589, cert den 400 US 851). "There is no indication that defendant was coerced into accompanying the police to the station, or that he was not free to leave" (*People v Ellis,* 83 AD2d 652; *People v Folnsbee, supra*). Moreover, Detective Hazel's deception during his questioning of Torres, and his reading of the *Miranda* rights to Torres, does not preclude a finding that under all the circumstances herein, a reasonable man, innocent of the crime, would have believed that he was free to go had he been in Torres' position prior to the making of an inculpatory statement (*People v Yukl, supra;* cf. *Oregon v Mathiason,* 429 US 492; *People v Ellis, supra*). Indeed, it would appear that Torres believed that he was not in custody, since there is no evidence that he ever protested the questioning or asked to leave. As the issue of custody presents a factual question (*People v Waymer,* 53 NY2d 1053, 1054; *People v Yukl, supra*), it cannot be said that Criminal Term's conclusion that Torres was not in custody at the time he gave his statement to Detective Hazel is erroneous as a matter of law or contrary to the weight of the evidence (cf. *People v Newson,* 68 AD2d 377, 385-388; *People v Ellis, supra*). Moreover, while a defendant's right to counsel has been expanded to preclude noncustodial questioning about matters on which a defendant is represented by counsel (*People v Skinner,* 52 NY2d 24) or where he has "affirmatively acted to interpose an attorney between himself and the police during [such] questioning" (*People v Ellis,* 58 NY2d 748, 750; see, also, *People v Knapp,* 57 NY2d 161, cert den __ US __, 103 S Ct 2452), nevertheless, we decline to extend that right to preclude noncustodial questioning under the circumstances of the instant case, where there is no evidence that Torres was represented by counsel with respect to the murder case, and he did not affirmatively act to interpose an attorney between himself and Detective Hazel during the December 14, 1979 interview (accord *People v Hauswirth, supra*). As stated by the court in *People v Hauswirth* (*supra,* p 359): "In extending the rule to preclude custodial interrogation concerning unrelated matters, the *Rogers* court explained (p 173) that the extension represented 'no

great quantitative change in the protection we have extended to the individual as a shield against the awesome and sometimes coercive force of the State.' '[T]he attorney's presence', the court stated, 'serves to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming.' (*People v Rogers,* 48 NY2d 167, 173, *supra*). The rule precluding noncustodial questioning concerning the same matters on which a defendant is represented by counsel is founded upon a different rationale. Once an attorney is retained to represent a defendant on a matter, the police should not be permitted to render that representation ineffective by questioning the defendant about matters relating to the subject of the representation. Moreover, a criminal defendant should have the same protection as a civil litigant who has the benefit of 'the ethical responsibility of attorneys in civil matters not to communicate on the subject of the representation with an individual known to be represented by an attorney on the matter'. (*People v Skinner,* 52 NY2d 24, 29, *supra*.) There is no sound basis for extending the Rogers rule to preclude noncustodial questioning about unrelated matters. Where the questioning is in a noncustodial setting, the State exerts no 'overwhelming' 'coercive influence' (*People v Rogers, supra,* p 173). And where the questioning concerns matters unrelated to those on which he is represented by counsel, the State does not interfere with the defendant's representation, nor does it breach the ethical rule proscribing direct communication, on the subject of the representation, with persons represented by counsel". Therefore, since Torres was not in custody at the time he made his inculpatory statement to Detective Hazel, his right to counsel was not violated and the denial of his motion insofar as it sought to suppress the statement on that basis was proper. We have considered the other contentions raised on the appeal and find them to be without merit. Damiani, J. P., Gibbons, Thompson and Boyers, JJ., concur.