THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM DONOVON, Appellant.

Second Department, April 1, 1985

434

**APPEARANCES OF COUNSEL**

*Manuel Nelson Zapata* (*Abraham Abramovsky* of counsel), for appellant.

*Patrick Henry, District Attorney* (*Steven A. Hovani* of counsel), for respondent.

## OPINION OF THE COURT

NIEHOFF, J.

On July 25, 1979, James (Jimmy) Donovon, the defendant's brother, disappeared from his home. On September 4, 1979, Jimmy's totally decomposed, nude body was found chained to a tree in a wooded area in North Shirley, New York, not far from his home. Death was caused by exposure, exhaustion and dehydration. Thereafter, defendant confessed that he had chained Jimmy to the tree and had left Jimmy to die in the woods. After trial, defendant was convicted of murder in the second degree and was sentenced to a prison term of 20 years to life.

In seeking a reversal of his conviction, defendant argues that (1) his right to counsel was violated both before and after his arrest when he was questioned in the absence of counsel who was representing him in a pending unrelated case; (2) the prosecution failed to meet its burden of proving beyond a reasonable doubt the voluntariness of his confessions as dictated by Federal and New York law; (3) he did not have the mental capacity to knowingly, freely and voluntarily decide to accompany the police to the station house where he confessed; and (4) he was seized without probable cause.

We are satisfied that although defendant may suffer from certain mental deficiencies, the record establishes that he had the mental capacity to knowingly, freely and voluntarily decide to accompany the police to the station house and that it supports the hearing court's determination that the People sustained their burden of proving the voluntariness of defendant's confessions, as well as its finding that defendant's confessions did not result from an illegal detention on less than probable cause. We do not believe that we need spend any further time on those issues. But the right to counsel issue does merit discussion. As will be demonstrated *infra*, the factual record made by defendant on which we must decide the issue is wholly insufficient to support his assertion that his right to counsel was violated when he admitted to the police that he was responsible for the death of his younger brother.

### THE FACTS

At about 6:30 P.M. on July 25, 1979, Jimmy Donovon left his house in North Shirley, Long Island, riding his bicycle. About 7:00 P.M. that evening the defendant William Donovon, Jimmy Donovon's older brother, left the family residence driving a station wagon. As defendant approached a local delicatessen, he noticed his brother, stopped the car, and asked Jimmy if he

wanted a ride. Jimmy entered the vehicle and his bicycle was placed in the rear of the wagon. While riding in the car, Jimmy started to "bug" the defendant about $100 that defendant owed him and, although defendant indicated that he would not repay the money immediately because he was out of work, Jimmy persisted in requesting payment. As the two boys approached a wooded area, defendant decided to punish Jimmy for insisting upon repayment of the $100. Toward that end, he lured Jimmy out of the car by telling him that he found some bike parts in the woods on a previous occasion. Defendant removed Jimmy's bicycle from the vehicle under the pretense of using it to determine whether the bicycle parts were usable. When they had walked deeper into the woods, defendant dropped the bike on the ground, removed the chain and lock from the bicycle, pushed his brother against the tree, threw the chain around him and locked it. When Jimmy realized that defendant was not going to release him, the youngster threatened to tell their mother about the incident. Hearing that, defendant went back and stripped Jimmy of his clothing so that if he were found by somebody, it would appear that he had been raped.

Around midnight that night, defendant went back to the scene to see how Jimmy was doing. When he came upon his brother, Jimmy looked like he was sleeping and he did not wake in response to defendant's call. Defendant decided to abandon Jimmy although he knew he might die.

About one week later, defendant returned to the scene and observed that his younger brother smelled and that there were flies all over him. Several weeks later, the defendant returned and he described Jimmy's body as then being black, with bugs crawling all over his face.

On September 4, 1979, the body was discovered. After the body had been tentatively identified as Jimmy Donovon, the investigating officer, Detective Anthony B. Palumbo, proceeded to the Donovon household and spoke to a number of the family members, including the defendant. Thereafter, on September 13, 1979, Detectives Palumbo and Donahue arranged to meet with the defendant in order to search various areas of the woods. Defendant was not home when they arrived, so they met with him the following morning.

When the officers asked defendant if he knew where his brother's body had been found, he responded in the affirmative and proceeded to direct the officers to the correct location. After giving two different versions of how he knew the location, defendant was again asked how he knew the area and he

responded, "I just know", adding "I had nothing to do with my brother's murder * * * and I want to take a polygraph right now to prove it to you". When defendant insisted that he wished to undergo a polygraph examination in spite of the officers' assurance that it was not necessary, the officers advised him of his *Miranda* warnings and they all went down to police headquarters.

That afternoon, a polygraph test was administered by Officer Marilyn Schwartz. During the course of the examination, the investigating detectives were informed that defendant was being deceptive with respect to a number of key questions. Following further discussions, the defendant admitted his complicity and, subsequently, he confessed orally and in writing.

Defendant moved to suppress his statements alleging, *inter alia,* that the "defendant was not properly advised of his constitutional right to counsel and the statements that he made were obtained in violation of that right". No claim was made in Criminal Term that suppression of defendant's confessions was mandated because they were obtained in the absence of counsel who was representing him on an unrelated pending charge.

### THE RIGHT TO COUNSEL ARGUMENT
#### RAISED ON THIS APPEAL

On this appeal, defendant raises an issue not raised at his suppression hearing, i.e., that his right to counsel under the Federal and State Constitutions was violated both before and after his arrest when he was questioned in the absence of counsel he had on a pending, unrelated case. Defendant claims that although he was arrested for murder on September 14, 1979 and was not represented on such charge at the time he confessed, he had been arrested previously by the Suffolk County Police Department on a burglary charge on June 16 of that same year and was still being represented by counsel on that charge. Defendant goes on to state that because the same police officer (Marilyn Schwartz) had administered polygraph examinations on both occasions, the Suffolk County Police Department must be presumed to have had actual knowledge of his prior arrest. Based upon the rule which was proclaimed in *People v Bartolomeo* (53 NY2d 225), decided after defendant's trial had been completed, defendant contends that his confessions were obtained in violation of his right to counsel and must be suppressed.

### ANALYSIS OF THE LAW

Our Court of Appeals has ruled that "[o]nce an attorney enters the proceeding, the police may not question the defendant in the

absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel" (*People v Arthur*, 22 NY2d 325, 329). In *People v Rogers* (48 NY2d 167), the Court of Appeals extended the *Arthur* rule by declaring that if a defendant who is in custody is represented by an attorney on *any* pending criminal charge, including one unrelated to the matter under investigation, he cannot effectively waive his right to counsel without counsel being present. In the *Rogers* case, the defendant had informed the police that he had an attorney on the unrelated charge but that he was willing to speak in the absence of an attorney. Thus, that case was one wherein the record revealed that the police had actual knowledge of the representation on the unrelated charge. In *People v Bartolomeo* (53 NY2d 225, *supra*), the Court of Appeals further extended the right to counsel rule by announcing that in certain circumstances the police would be charged with constructive notice of representation on an unrelated charge. In that case the interrogating officer had actual knowledge of the fact that the suspect he was questioning had been arrested by the same law enforcement agency nine days earlier on an unrelated arson charge. The holding of the case is summed up in these words: "[T]he interrogating detectives here, with actual knowledge of the outstanding arson charge against defendant, were under an obligation to inquire whether defendant was represented by an attorney on that charge. Having failed to make such inquiry, the officers were chargeable with what such an inquiry would have disclosed — namely, that defendant did have an attorney acting on his behalf. With such knowledge they were foreclosed either from questioning defendant or from accepting his waiver of counsel's assistance unless his attorney was then present" (*People v Bartolomeo,* 53 NY2d 225, 231-232, *supra*).

The *Rogers-Bartolomeo* rule does not apply to a suspect who is not in custody (*People v Torres,* 97 AD2d 802; *People v Bertolo,* 102 AD2d 193, 203, *lv granted* 63 NY2d 680).

### RETROACTIVE APPLICATION OF THE RULE
### TO THIS CASE

In *People v Morales* (37 NY2d 262, 267-268), Judge Fuchsberg, writing for a unanimous court noted: "The concept of 'retroactivity' is not new. It has an ancient tradition, under which Judges were not deemed to 'make law' as such, but to 'pronounce the law' which, even if it had previously been enunciated erroneously, was conceived of as having always been there, waiting

just to be correctly stated. (Mishkin, The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv L Rev 56, 58.) Consequently, since the 'correct' law was looked upon as having always been the same, a case decided on direct appeal always received the benefit, or detriment, of any decisional law 'pronounced' before its judgment became final."

Subsequently, in *People v Pepper* (53 NY2d 213), Judge Fuchsberg addressed the troublesome prospective versus retrospective issue in criminal cases and set forth the law as follows:

"In a series of opinions, both this court and the United States Supreme Court have addressed the subject, both in cases pending on direct appeal and, if the appellate process has been exhausted, where relief is sought in collateral proceedings (see, e.g., *United States v Peltier,* 422 US 531; *People v Morales,* 37 NY2d 262, 268-269, *supra,* and cases cited thereat).

"This is not to say that definitive standards have evolved. But neither is the field untracked. As we noted in *Morales* (37 NY2d 262, 269, *supra*), useful, if general, guidelines, are available. In judging whether it is more appropriate to adhere to rather than deviate from the common-law convention, be it to grant full retroactive application (permitting a collateral attack on a conviction no longer in normal appellate channels) or to limit relief to prospective police conduct or trials, in *Desist v United States* (394 US 244, 249), the Supreme Court stressed, and in *Morales* we had occasion to weigh, three factors: '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards'. In this formulation, the extent of the reliance and the nature of the burden on the administration of justice are of substantial significance only when the answer to the retroactivity question is not to be found in the purpose of the new rule itself (*Desist v United States, supra,* p 249).

"Thus, where otherwise there could be a complete miscarriage of justice, current constitutional standards that go to the heart of a reliable determination of guilt or innocence have been substituted for those in effect at the time of trial (*Stovall v Denno,* 388 US 293, 297 [right to counsel decisions 'at stages of the prosecution where denial of the right must almost invariably deny a fair trial']; *Holloway v McElroy,* 632 F2d 605 [appellate review of sufficiency of evidence]). So too, at the other end of the spectrum, decisions which are only collateral to or relatively far removed from the fact-finding process at trial have

been applied prospectively (e.g., *United States v Peltier,* 422 US 531, *supra* [exclusionary rule in search and seizure cases, the intended deterrent effect of the ruling having no necessary relationship to the reliability of the admitted proof]).

*"In contrast to the extremes described in these Federal cases, as our own decisions have made clear, a defendant's right to counsel in pretrial encounters falls within a middle ground. So, while we have found retroactivity in order in such cases, its application has been limited to those still on direct review at the time the change in law occurred* (e.g., *People v Albro,* 52 NY2d 619, 624; *People v Bell,* 50 NY2d 869; *People v Singer,* 44 NY2d 241, 251; *People v Macedonio,* 42 NY2d 944). *In counterpoint, we have denied retroactive application where that process has been exhausted* (*People v Wooden,* 46 NY2d 938; *People v Robles,* 42 NY2d 1051; *People v Rivera,* 16 NY2d 879)" (*People v Pepper,* 53 NY2d 213, 220-221, *supra;* emphasis supplied).

■ Manifestly, the *Bartolomeo* rule sought to be invoked by the defendant on this appeal involves his right to counsel during the pretrial encounter at the police precinct. Indeed, in *People v Moore* (87 AD2d 639, 640), this court concluded "that decisions dealing with the right to counsel in pretrial encounters are to be applied to those cases * * * which are on direct review at the time the change in law occurred" and applied the *Bartolomeo* rule to that matter. Similarly, the defendant herein is entitled to have the rule applied on direct review of his judgment of conviction.

#### THE WAIVER ARGUMENT ESPOUSED BY THE PEOPLE

■ While the People do not seriously dispute the retroactive application of the *Bartolomeo* rule to cases pending on direct appeal, they do argue that the defendant failed to preserve the *Bartolomeo* issue for appellate review. It is claimed that under the doctrine of preservation, the failure of defendant to have challenged at the suppression hearing the admissibility of his confessions on the basis of a *Bartolomeo* rationale automatically precludes him from doing so in the context of these appeals. We reject this contention for it is settled law that the right to counsel is of such importance that a claim of deprivation may be raised for the first time on appeal (*see, People v Cullen,* 50 NY2d 168; *People v Samuels,* 49 NY2d 218).

#### THE LACK OF AN ADEQUATE APPELLATE RECORD

From the above we see that (1) defendant may raise the issue for the first time in this court in spite of his failure to assert, at nisi prius, that his right to counsel was violated because he was

represented by counsel on a previous charge and (2) the defendant is entitled to have the *Bartolomeo* rule applied retroactively to this case. Nevertheless, in order for such a claim to be reviewed, a sufficient factual record must have been developed (*People v Kinchen,* 60 NY2d 772). Stated somewhat differently, notwithstanding the fact that a defendant may raise a deprivation of counsel argument for the first time on appeal, and that he is entitled to have *Bartolomeo* applied retroactively to his case, he is not entitled to succeed on that issue if the record before the appellate court fails to disclose facts sufficient to establish the deprivation. It should be noted that in *People v Moore* (87 AD2d 639, *supra*), upon which defendant places some reliance, the record did contain facts sufficient to permit appellate review and a determination in defendant's favor.

The record before us contains two references to defendant's past conduct. First, there is defendant's testimony at the suppression hearing that Officer Schwartz had administered a polygraph examination not only in connection with the instant case on September 14, 1979, but also in June of 1979. This information was elicited by the People, over defense objection, on cross-examination of defendant, to show that since defendant had voluntarily consented in June to take a polygraph test, his claim that he had been coerced in September was meritless. Second, there is the testimony at trial of defendant's medical expert, Dr. Zolan, to the effect that defendant had told him that upon the occasion of his prior arrest for burglary, defendant had initially denied responsibility but then decided to admit responsibility after the polygraph test was taken.

The foregoing constitutes all the record evidence available to this court on the *Bartolomeo* issue and is wholly insufficient to warrant suppression of the defendant's confessions.

The record is devoid of any evidence that the interrogating officers (Detectives Palumbo and Donahue, the ones who elicited the confessions from him) had actual knowledge of the prior burglary charge or the pendency of that charge. Nor is there anything in the record to establish, or even suggest, that Officer Schwartz, the officer who conducted the polygraphs, knew that defendant had ultimately been charged with burglary, or that she knew that a burglary charge was still pending in September. Furthermore, as pointed out by the People, in view of the brief interaction between Schwartz, Palumbo and Donahue, it cannot be said that the latter two deliberately overlooked the obvious or insulated themselves from actual knowledge of the pending charge. Moreover, at the time Schwartz conducted the polygraph, defendant, as far as the record shows, was not in custody

and, therefore, at that juncture, the *Rogers-Bartolomeo* rule would not have been applicable in any event (*see, People v Torres, supra; People v Bertolo, supra; see also, People v Rowell,* 59 NY2d 727). Finally, the record on appeal contains no evidence whatsoever to establish that defendant was represented by counsel on any unrelated charge. Hence, the record before us does not establish a *Bartolomeo* violation.

It should be noted that defendant does not argue that he should be granted a new suppression hearing at which he may more fully develop the facts in the event that we find the record to be insufficient to sustain his *Bartolomeo* claim. Were such a request to have been made, we would have been compelled to reject it. Notwithstanding that *Bartolomeo* was not decided until after defendant's trial was concluded, the defendant was afforded the same opportunity as the defendants in *Bartolomeo* and *Moore* (*supra*) to have developed a full record and he failed to do so.

██ Although, as we have shown, a defendant is entitled to claim the benefit of a retroactive ruling on a point of law, it does not follow that retroactivity mandates a second hearing. This is especially true when there is nothing in the record to suggest that the first hearing was not conducted fairly (*see, e.g., People v Fuentes,* 53 NY2d 892; *see also, People v Knapp,* 52 NY2d 689, 699 [concurring opn of Jasen, J.]; *cf. People v Cohen,* 58 NY2d 844) or that defendant's failure to submit sufficient proof was due to the fact that he was not permitted to do so by the hearing court (*see, e.g., People v Payton,* 51 NY2d 169).

### THE CPL ARTICLE 440 MOTION

By motion returnable April 18, 1983, some 2½ years after defendant was sentenced, he moved in the Supreme Court, Suffolk County, pursuant to CPL 440.10 and 440.30 for an order vacating his judgment of conviction on the ground that his confession was obtained in violation of his right to counsel. On that motion, defendant, for the first time, argued that the administration of the separate polygraph examinations by the same Suffolk County police officer three months apart constituted actual notice of the pendency of a prior unrelated charge, and that, in the absence of inquiry, the officers were chargeable with that which the inquiry would have disclosed, namely, that defendant was represented by counsel on the other charge. Included in the moving papers was the affirmation of a member of the Suffolk County Legal Aid Society who indicated that his

agency had represented defendant on a burglary charge from June 1979 until September 8, 1980, when the charge was dismissed.

■ The People opposed the motion on the ground, *inter alia,* that defendant could have, with due diligence, under the decisional law in effect at the time of the trial, raised the issue presented on the motion and made a complete and proper record. Criminal Term summarily denied the motion. We affirm.

CPL 440.10 represents the codification of common-law postjudgment coram nobis proceedings. Under said section, the court in which a judgment of conviction is entered may, upon motion of the defendant, vacate the judgment upon the ground that, *inter alia,* "[m]aterial evidence adduced by the people at a trial resulting in the judgment was procured in violation of the defendant's rights under the constitution of this state or of the United States" or "[t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [d], [h]).

CPL 440.10 (3) (a) provides, in pertinent part, that:

"3. Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when:

"(a) Although *facts* in support of the ground or issue raised upon the motion *could with due diligence by the defendant have readily been made to appear on the record* in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, *the defendant unjustifiably failed to adduce such matter prior to sentence* and the ground or issue in question was not subsequently determined upon appeal" (emphasis supplied).

The purpose of the above procedure is to inform a court of facts not reflected in the record and unknown at the time of the judgment which, as a matter of law, would undermine the basis of the judgment (*People v Crimmins,* 38 NY2d 407). By its very nature, the procedure cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal (*People v Brown,* 13 NY2d 201; *People v Howard,* 12 NY2d 65). Rather, postjudgment proceedings are viewed as an emergency measure to afford a defendant a remedy when no other judicial relief is, or ever was, available to him (*People v Bennett,* 30 NY2d 283, 287-288). As noted by Judge Scileppi in *Bennett* (*supra,* p 288) "coram nobis requires, in addition to the assertion of a fundamental constitutional right, that the opportunity to assert the same has been substantially impaired or denied". Without question the facts needed to support the defendant's arguments on

his postjudgment motion (his prior arrest and legal representation on the burglary charge) were known long before the suppression hearings were held in this case and defendant was in no way prevented or denied an opportunity to fully assert his claim before the suppression court.

Although the Court of Appeals decided *Bartolomeo* after the trial of this action, its holding in that case was foreshadowed by *People v Rogers* (48 NY2d 167) which was decided prior to the suppression hearing in the case at bar. Indeed, in *People v Torres* (97 AD2d 802, 803, *supra*), this court characterized the holding of *Bartolomeo* as a mere extension of the principle enunciated in *Rogers* "that the police may not question a defendant who is in custody and represented by counsel on pending matters, on matters related or unrelated to those pending matters, in the absence of his counsel, unless there is an affirmative waiver, in the presence of counsel, of the defendant's right to counsel". That being so, defendant, with due diligence, could easily have raised this matter at the hearing and "fleshed out" the record by bringing out the pendency of any unrelated charge, his representation by counsel on such charge, and whether or not the interrogating officers were aware of the prior arrest. Having failed to do so, he may not now avail himself of a CPL article 440 motion as a means of supplementing the record on appeal herein.

Finally, as set forth above, the Court of Appeals has held that a ruling with respect to a defendant's right to counsel in pretrial encounters need not be given complete retroactivity, i.e., that kind of retroactivity which permits a defendant to insist on wiping the record clean and starting anew so as to make a hearing pursuant to CPL article 440 compulsory (*see, People v Pepper,* 53 NY2d 213, 222, *supra*). In sum, the summary denial of defendant's postconviction motion did not constitute an abuse of discretion (*People v Friedgood,* 58 NY2d 467; *People v Brown,* 56 NY2d 242).

For the foregoing reasons, the judgment and order appealed from should be affirmed.

MOLLEN, P. J., BRACKEN and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Suffolk County, rendered November 19, 1980, and, upon appeal by permission, order of the same court, dated July 19, 1983, affirmed.