THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER LEONARD, Appellant.

Second Department, December 16, 1985

---

**APPEARANCES OF COUNSEL**

*Stephen J. Pittari* for appellant.

*Carl A. Vergari, District Attorney (Gerald D. Reilly* and *Anthony J. Servino* of counsel), for respondent.

### OPINION OF THE COURT

WEINSTEIN, J.

We conclude, reluctantly, that a reversal of the judgment of conviction is warranted in this case on constraint of *People v Bartolomeo* (53 NY2d 225) and *People v Rogers* (48 NY2d 167). While we regard defendant's other contentions as devoid of merit and would otherwise vote to affirm, we are nevertheless constrained by precedent to reach this unpalatable result.

The appeal involves a tragic fire at Gulliver's discotheque in Port Chester on June 29 and 30, 1974, which claimed the lives of 24 individuals. On that same night, there had been an attempted burglary of a nearby Homelite store *(see, People v Leonard,* 59 AD2d 1). On the night of the fire, defendant was observed running from the Homelite building, which was located approximately 100 feet away from Gulliver's, into an adjoining bowling alley. He was thereafter called in for questioning by the Connecticut State Police.* After signing a statement admitting that he had broken a window and glass door to the Homelite store, defendant agreed to take a polygraph test. The test was scheduled for July 11, 1974, at 9:00 A.M. and arrangements for defendant's transportation to the State Police barracks in Bethany, Connecticut, were made.

En route to take the polygraph test on the morning of July 11, 1974, defendant informed Sergeant Ambrose of the Greenwich Police Department that he was represented by counsel with respect to a pending larceny charge for which he had been recently arrested involving the theft of copper downspouts from two buildings. Additionally, defendant informed the officer that his local attorney, Lawrence Kristoph, had advised him not to take the polygraph test. Notwithstanding his attorney's advice to the contrary, defendant stated that he still wanted to take the test in order to clear up the matter.

At approximately 11:00 A.M., defendant requested that his interview with the police be terminated on the ground that he was ill and not up to proceeding with the polygraph test. Defendant was immediately disconnected from the polygraph machine and was informed that he was free to leave the State Police laboratory. In the course of the car trip back home, defendant informed the police that he had lied. He was thereupon interrupted by Detective Lovallo of the Port Chester police and advised of his rights. Defendant nevertheless

---

* The matter was being jointly investigated by the New York and Connecticut police.

stated that he had broken into Carol Lanes Bowling Alley and agreed to accompany the police officers to the State Attorney's office in Bridgeport.

Upon arriving at Bridgeport, the officers provided defendant with lunch, and thereafter proceeded to discuss this incident. Defendant was once again advised of his constitutional rights. At this time, defendant was free to leave and had a telephone at his disposal at all times. By 1:45 P.M., defendant had provided the police with a statement, later reduced to writing, to the effect that he had broken into the bowling alley shortly after 10:30 P.M. on the night in question, that he had been smoking a cigarette which he immediately dropped down a stairway and that he had stolen some cigarettes from a machine before leaving the premises at approximately 11:45 P.M. *(see, People v Leonard, supra,* at p 6).

After obtaining defendant's statement, the police sought the professional opinions of certain fire investigators with reference to the cause of the fire at Gulliver's. After ascertaining that the fire could not have started in the manner described in defendant's statement, Detective Solomon resumed his questioning of defendant with reference to Gulliver's. Defendant ultimately admitted that he had intentionally started the fire in an attempt to cover up his burglary. Upon further questioning by the police, defendant admitted that he had stuffed some stationery paper, which he had obtained from the front desk of the bowling alley, into a toy box in the nursery section of the bowling alley. He then apparently ignited it. Defendant explained that he had not revealed this previously since he feared that the police would conclude that he had intentionally started a fire in order to "kill those people that were in Gulliver's".

Although defendant made no specific claim that he was in police custody all this while, we find that given the content of defendant's 1:45 P.M. statement, the general nature of the investigation, and, in particular, the direction in which it was proceeding from that point "it is beyond belief that he was free to leave the questioning officers after that time" *(People v Leonard, supra,* at p 14).

It is well settled that once an attorney has entered a proceeding on behalf of an accused, the police may not question the accused in the absence of counsel without an affirmative waiver, in the attorney's presence, of the right to counsel *(see, People v Arthur,* 22 NY2d 325, 329; *see also, People v*

*Settles,* 46 NY2d 154; *People v Ramos,* 40 NY2d 610; *People v Hobson,* 39 NY2d 479). In *People v Rogers* (48 NY2d 167, *supra),* the Court of Appeals extended the *Arthur* rule by declaring that if a defendant who is in custody is represented by an attorney on any pending criminal charge, he cannot effectively waive his right to counsel unless counsel is present. The court therein declared "once a defendant is represented by an attorney, the police may not elicit from him any statement, except those necessary for processing or his physical needs" *(People v Rogers, supra,* at p 173).

In *People v Bartolomeo* (53 NY2d 225, 231-232, *supra),* the Court of Appeals further extended the right to counsel rule by holding that the police, under certain circumstances, would be charged with constructive notice of representation on an unrelated charge. More specifically, the majority proclaimed that where the police had actual knowledge that a defendant being questioned had recently been arrested on another charge, they bore an obligation to inquire whether that defendant was represented by counsel with respect to that charge. Should they fail to conduct such an inquiry, the police would nevertheless be chargeable with what such an inquiry would have disclosed.

More recently, the Court of Appeals has held that application of the *Rogers-Bartolomeo* rule is limited to custodial interrogations *(People v Bertolo,* 65 NY2d 111, 116). "By contrast, eliciting inculpatory statements from a suspect under noncustodial circumstances 'involves no violation of [the] right to counsel even [where] the police are aware that [the suspect] has counsel on a prior unrelated charge' " *(People v Bertolo, supra,* at p 116). Inasmuch as we find that the inculpatory statements made by defendant prior to 1:45 P.M. on July 11, 1974 were not the product of custodial interrogation, we find no reason to warrant their suppression. Unfortunately, existing circumstances mandate a different result with respect to the post-1:45 P.M. statements.

Notwithstanding the fact that the underlying events long preceded the aforesaid court decisions, it has been held that decisions dealing with the right to counsel in pretrial encounters are to be applied to those cases which are on direct review at the time the change in law occurred *(see, People v Pepper,* 53 NY2d 213, 220-221, *cert denied* 454 US 967; *People v Bell,* 50 NY2d 869; *People v Donovon,* 107 AD2d 433; *People v Moore,* 87 AD2d 639, 640). We note further that no objection is required in order to preserve for appeal a claimed depriva-

tion of the State constitutional right to counsel provided there exists a factual record sufficient to permit appellate review *(see, People v Kinchen,* 60 NY2d 772). The record in the instant case does not fail to disclose facts sufficient to establish the deprivation. Consequently, although defendant failed to raise an appropriate objection at trial, the issue cannot be deemed waived. Nor can it reasonably be contended, on this record, that defendant waived his right to review by having made affirmative use of the statements he now wishes to suppress *(see, People v De Renzzio,* 19 NY2d 45).

Under the circumstances, we must conclude that the police, who knew of defendant's representation on the unrelated charge, were remiss in failing to have obtained from him, once custodial interrogation commenced, a knowing waiver of his right to counsel made in the presence of counsel. The illogic of this result has been cogently set forth by Chief Judge Wachtler in the course of his dissenting opinion in *People v Bartolomeo (supra,* at p 239): "It is the common criminal, not the one-time offender, who nearly always will manage to have at least one serious charge pending, so that the attorney in the picture can provide him with virtual immunity from questioning in subsequent investigations. I had thought it clear that although our courts are sometimes required to let the guilty go free, this is not because the Constitution serves only the miscreant, but rather because our constitutional protections must apply evenly to us all. By its analysis I believe the majority has turned this basic principle completely around".

Existing precedent requires us to reach this result notwithstanding the fact that this defendant has knowingly and voluntarily and without any hint of coercion whatsoever, confessed to the underlying crimes. As noted by the Court of Appeals, "No court has yet held that a police officer must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminatory statement within his hearing" *(People v Kaye,* 25 NY2d 139, 145). The well-known admonition of Justice Cardozo seems particularly applicable here: "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true" *(Snyder v Massachusetts,* 291 US 97, 122).

Thus, we are bound by currently existing law to reverse defendant's conviction a second time.

EIBER, J., concurs with WEINSTEIN, J.; LAZER, J. P., and THOMPSON, J., concur in the result only.

Judgment reversed, on the law, those branches of defendant's motion which sought suppression of statements made after 1:45 P.M. on July 11, 1974 granted, and new trial ordered.