■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES WILLIAMS, Appellant.—Appeal by the defendant (1) from a judgment of the Supreme Court, Kings County (Felig, J.), rendered December 7, 1979, convicting him of robbery in the second degree, after a nonjury trial, and imposing sentence, and (2) by permission, from an order of the same court (Booth, J.), entered June 29, 1981, denying his motion pursuant to CPL 440.10, to vacate the judgment of conviction. The appeal from the judgment brings up for review the denial, after a hearing, of the defendant's motion to suppress statements made by him to the police. By order dated July 11, 1983, this court held the appeals in abeyance and remitted the matter to the Supreme Court, Kings County, to hear and report on whether the police, at the time of questioning the defendant, knew that there was an unrelated charge pending against him or knew that he was represented by counsel on such a pending unrelated charge *(People v Williams,* 96 AD2d 542). The Supreme Court, Kings County (Kramer, J.), has now complied.

Judgment reversed, on the law and the facts, motion to suppress granted, indictment dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury *(People v Beslanovics,* 57 NY2d 726), and matter

remitted to the Supreme Court, Kings County, for the purpose of entering a securing order pursuant to CPL 470.45.

Appeal from the order dismissed as moot, in light of our determination on the appeal from the judgment.

In or about June 1978, the defendant was charged with murder in the second degree and robbery in the first degree in connection with the robbery and ensuing death of Frederick McKinley Smith in March 1978. A *Huntley* hearing was held in September 1978, to determine the admissibility of a statement concerning the robbery made by the defendant to police detectives while the defendant was incarcerated at Rikers Island for unrelated criminal offenses. The defendant told the detectives that he struck Smith, knocking him to the ground, and took money from Smith's hand during a dispute over money Smith allegedly owed him. The hearing court concluded that the statement was admissible because it had been given voluntarily and not in violation of the defendant's constitutional rights. The hearing court based its decision upon *People v Stanley* (15 NY2d 30). The defendant was subsequently convicted of robbery in the second degree, as a lesser included offense of robbery in the first degree, and was acquitted of the other charges.

In May 1981 the defendant moved to set aside the judgment of conviction upon the ground that it was based upon a confession which had been obtained in violation of his right to counsel. He relied upon the authority of *People v Rogers* (48 NY2d 167), which had been decided between the time of the trial and his sentencing. The defendant appealed, by permission, from the denial of his motion to vacate the judgment of conviction, and appealed directly from the judgment of conviction. Because the record indicated that there was a possibility that the police detectives who took the defendant's statement were aware of unrelated charges pending against him, this court remitted the matter to the Supreme Court, Kings County, for further inquiry.

Where the police have actual knowledge that a suspect in custody has an unrelated criminal matter pending against him, they are under an obligation to inquire whether that suspect is represented by counsel with respect to the pending matter *(see, People v Bartolomeo,* 53 NY2d 225; *People v Leonard,* 113 AD2d 258). Should the police fail to so inquire, they are chargeable with such knowledge that an inquiry would have disclosed *(People v Bartolomeo, supra).*

Despite the fact that the events leading to this appeal

occurred well before the Court of Appeals decided *People v Bartolomeo (supra),* the defendant is entitled to a retroactive application of its holding *(see, People v Leonard, supra).*

In *People v Donovon* (107 AD2d 433, 442), we held that "[a]lthough * * * a defendant is entitled to claim the benefit of a retroactive ruling on a point of law, it does not follow that retroactivity mandates a second hearing. This is especially true when there is nothing in the record to suggest that the first hearing was not conducted fairly *(see, e.g., People v Fuentes,* 53 NY2d 892; *see also, People v Knapp,* 52 NY2d 689, 699 [concurring opn of Jasen, J.]; *cf. People v Cohen,* 58 NY2d 844) or that defendant's failure to submit sufficient proof was due to the fact that he was not permitted to do so by the hearing court *(see, e.g., People v Payton,* 51 NY2d 169)".

While at first blush it might appear that our direction for a new hearing in this case was at odds with our holding in *People v Donovon (supra),* the facts of this case are distinguishable from *Donovon* in that here the record indicated that there was a strong possibility that the detectives who took the defendant's statement had knowledge of another case pending against the defendant, because the transcript of the original *Huntley* hearing made reference to the detective's knowledge of the defendant's upcoming court appearance. Under such circumstances, this court felt that in the interest of justice a new hearing should be held. However, our decision in that regard should not be construed as constituting a departure from our decision in *People v Donovon (supra).*

It was stipulated at the most recent hearing before Justice Kramer that the defendant was incarcerated at Rikers Island to both serve a sentence for violation of parole relating to a 1973 robbery conviction and to await disposition of charges relating to a March 1978 arrest for robbery. It was also stipulated to that the defendant was housed in a unit which contained both prisoners serving sentences and those awaiting trial.

Because of the long period of time which elapsed between the time when the defendant gave his statement and the most recent hearing, the memories of the detectives regarding the circumstances of the defendant's statement were almost entirely faded. None could recall whether he had any knowledge of the reason for the defendant's presence at Rikers Island. However, it is clear from the hearing record that no inquiry was made about the defendant's possible representation by counsel. The court admitted into evidence an entry from one of the detective's memo book, in which the detective had noted

that the defendant was to be released from Rikers Island in order to appear in "Part AP3" on the day after the defendant made his statement to the detectives.

The hearing court determined that the defendant had an open case pending against him in the Criminal Court of the City of New York, Kings County, at the time the statement was made, and that the defendant was represented by counsel. Finally, the court concluded that, based upon the memo book entry, the detectives knew that the defendant was scheduled to appear in "Part AP3" and that "reasonable inquiry from that information would surely have * * * disclosed an open and pending case with an attorney representing the defendant".

The clear implication of the court's finding that the detectives knew the defendant was scheduled to appear in the Criminal Court, Part AP3, is that the detective knew the defendant had an open criminal matter pending against him at the time they took a statement from him. Under these circumstances, they were obligated to inquire about representation by counsel, and, since they failed to do so, they are chargeable with the knowledge that the defendant was, in fact, represented by an attorney (see, People v Bartolomeo, supra). Gibbons, J. P., Thompson, Niehoff and Rubin, JJ., concur.