■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD L. SAMPSON, Appellant.—Weiss, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered May 16, 1986, convicting defendant upon his plea of guilty of the crime of murder in the second degree.

On August 20, 1984, Robert Weeks was fatally shot at his variety store in the Town of Hoosick, Rensselaer County. On November 13, 1984, defendant was questioned by the New York State Police in Bennington, Vermont, and orally admitted that he shot the victim. Thereafter, defendant was charged in a three-count indictment with two counts of murder in the second degree and robbery in the first degree. Following the denial of his motion to suppress the statements made on November 13, 1984, defendant pleaded guilty to murder in the second degree and was sentenced to a term of 25 years to life imprisonment. This appeal ensued.

Insofar as defendant maintains that the prosecution failed to timely notify him of the Grand Jury proceedings pursuant to CPL 190.50 (5) (a), and that the prosecution improperly issued certain subpoenas prior to the commencement of any proceedings against him, we find that both claims were effectively waived by his plea of guilty (see, People v Taylor, 65 NY2d 1, 5; People v Kehn, 132 AD2d 778; People v Ferrara, 99 AD2d 257, 259).

Defendant further asserts that County Court erred in failing

to suppress his November 13, 1984 statements as the product of an illegal custodial interrogation *(see, Dunaway v New York,* 442 US 200). We disagree. At the suppression hearing, State Police Investigator Joseph Lewis testified that on the morning of November 13, 1984, he and several other officers traveled to Vermont for the express purpose of questioning defendant. During the investigation, the State Police had discovered that defendant was present at the crime scene on the day of the occurrence and, shortly thereafter, had spent a considerable sum of money in Atlantic City, New Jersey. Notably, the victim's wallet was missing. As Lewis observed, however, defendant was a suspect but there were no "concrete" facts against him. En route to Brattleboro, Vermont, where defendant resided, the police spotted defendant in Bennington. When defendant parked his vehicle in a restaurant parking lot, Lewis pulled alongside in an unmarked police vehicle. A second unmarked police vehicle stopped some 15 to 20 feet behind defendant's car. Lewis approached defendant, who remained seated in his car, and identified himself as a New York State Police officer. Lewis then asked defendant if he would be willing to discuss the Weeks matter. According to Lewis, defendant indicated that he knew Weeks but was unaware of his death. Defendant then voluntarily agreed to accompany Lewis to the Bennington Police Department for questioning. Defendant agreed to drive Lewis to the police station. During this encounter, Lewis did not frisk or handcuff defendant, nor were any weapons utilized. In contrast, defendant testified that he was frisked, held at gunpoint, and essentially coerced into accompanying Lewis to the police station.

To determine the existence of a custodial situation, we look to what "a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" *(People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). In our view, County Court had ample basis to find that defendant voluntarily accompanied the police *(see, People v Rose,* 122 AD2d 484, 485; *People v Ferkins,* 116 AD2d 760, 761, *lv denied* 67 NY2d 942; *People v Hopkins,* 86 AD2d 937, 938, *affd* 58 NY2d 1079). Lewis conceded that there was no probable cause to arrest defendant *(see, People v Medvecky,* 95 AD2d 921, 922) and that his intentions were to talk to defendant "if he would talk to us". The divergent testimony as to what actually transpired during the parking lot encounter presented a factual question based on credibility, and County Court was free to credit the police officer's version *(see, People v Urso,* 132 AD2d 769;

*People v Brainard,* 122 AD2d 299, 300). That defendant was a prime suspect and was taken to the police station for questioning did not render the interrogation custodial *(see, People v Goodrich,* 126 AD2d 835, 836, *lv denied* 69 NY2d 880).

We further find that defendant's statements at the Bennington Police Station were voluntarily made. According to Lewis, defendant was not frisked at the station, but simply taken to an interview room. Although defendant testified that he was not informed of his *Miranda* rights, Lewis confirmed that he read the *Miranda* warnings at the commencement of the interview and further advised defendant that he could terminate the interview at any time. Again, this conflict in testimony raised a credibility issue for County Court to resolve *(see, People v Urso, supra).* The record confirms that defendant, who had previous criminal experience, was fully aware of his *Miranda* rights. Defendant's assertion that he was entitled to repeated warnings each time a different team of investigators questioned him is simply unavailing *(see, Miranda v Arizona,* 384 US 436, 473-474). County Court could also discredit defendant's claim that he requested an opportunity to consult with his wife and an attorney prior to being questioned.

It is further clear that the initial questioning of defendant, which began shortly after 10:00 A.M. on November 13, 1984, was of an investigatory rather than an adversarial nature *(see, People v Winchell,* 98 AD2d 838, 839, *affd* 64 NY2d 826; *People v Yanus,* 92 AD2d 674, 675). Defendant maintains, however, that the atmosphere at the police station transformed into a custodial situation prior to any admissions and that his ensuing statements were the product of an illegal detention. The record shows that it was shortly after 2:00 P.M. when defendant admitted shooting Weeks. Our review of the record shows that defendant voluntarily participated during this four-hour interrogation period and, while he was not advised that he was free to leave, no such request was made *(see, People v Goodrich, supra).* Under these circumstances, we find that defendant's initial confession was not made in the context of a custodial interrogation and was voluntary *(see, People v Ferkins, supra,* at 762). Consequently, County Court properly refused to suppress these statements.

Once defendant admitted killing Weeks, however, it would be implausible to suggest that he was not in custody *(see, People v Leonard,* 113 AD2d 258, 260, *lv denied* 67 NY2d 885). At this juncture, a question is raised as to whether the State Police had any legal authority to detain defendant outside their territorial jurisdiction. The question becomes pertinent

for defendant made further inculpatory statements while being transported to Brattleboro. We note that a further dispute exists as to whether defendant was asked to prepare a diagram of the crime scene and sign a written statement after requesting the assistance of counsel at approximately 6:00 P.M. on November 13, 1984. Even accepting, arguendo, defendant's thesis that the State Police lacked authority to detain him and that the statements made en route to Brattleboro and thereafter emanated from an illegal detention, any error in County Court's refusal to suppress these statements does not require reversal here. In his brief, defendant concedes that all of these statements were similar to his initial confession in Bennington. Given this concession, we deem the failure to suppress the cumulative statements harmless error (see, People v Sanders, 56 NY2d 51, 66-67; People v Krom, 91 AD2d 39, 44-45, affd 61 NY2d 187; People v Ferkins, 116 AD2d 760, 762-763, supra).

Judgment affirmed. Mahoney, P. J., Casey, Weiss, Yesawich, Jr., and Levine, JJ., concur.